[Crim. No. 4572. First Dist., Div. Two. Dec. 14, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. R. D. DAVIS, Defendant and Appellant.

Brian D. McGinty, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., and Michael R. Marron, Deputy Attorneys General, for Plaintiff and Respondent.

SHOEMAKER, P. J.—This is an appeal by defendant R. D. Davis from a judgment convicting him of possession of heroin, in violation of Health and Safety Code, section 11500.

On January 9, 1963, commencing at 11 a.m., the Oakland police had under surveillance the premises at 1422 Brush Street. They observed a car pull into its driveway, heard its horn sounded, and saw Freddie Harrington, known to the police as a dealer in and user of narcotics, alight from the car, start to enter the building, but then walk to a point beneath a second story window on the south side of the

building, at which window appellant Davis appeared. Harrington raised his cupped hands toward the window and an unidentified arm threw a small white object out the window, which landed by Harrington, who picked it up, got in his car and left. Pursuit was instituted, which Harrington became aware of and took evasive action. He eluded the police for a short time but was finally stopped in his car, and although a search was made of Harrington and the car, no white object was discovered, but fresh injection marks were seen on Harrington's arms.

Next, Leon Johnson, who had worked with the police on narcotics cases as a special employee, was seen leaving the building. He was followed by the police and approached by them just as he was entering a grocery two blocks away. He made a throwing motion with his hand and the police recovered eight papers containing what appeared to be heroin.

Next, Irene Blackshear, who had been arrested by Oakland police on several occasions for narcotics violations, left the building and went to the corner of 15th and Brush, where she was shortly joined by Clifton Weems, who also had a record for narcotics, and who had come from the building. Weems was stopped within a few minutes and his arm showed fresh injection marks. Weems told the officers he had passed out from a narcotics injection while at 1422 Brush.

Irene Blackshear reappeared at 15th and Brush, where appellant and Curley Davis, a woman, joined her. The parties talked for five minutes, then appellant and Davis went to the building where appellant handed her some keys. Appellant went on his way toward 14th Street and Davis unlocked the door and entered the building.

Appellant was arrested a short distance away in a liquor store. A Nalline test given later that day indicated he was then under the influence of a narcotic. After arresting appellant, the officers went to 1422 Brush and knocked on the front door, which was opened by Davis. Officer Prentice observed injection marks on her left inner elbow, concluded they were fresh and that she was then under the influence of narcotics, whereupon he arrested her and said, ''Let's go take a look at your room.'' She then took them to Room 7 on the second floor, which was the same room in which appellant had been observed at the window. A search of the room turned up 13 bindles of heroin under the spread on the bed, and clothing of appellant and Davis in the closet,

The owner of the building testified that she had rented the room to appellant in November 1962, and that he had paid the rent for November, December and January to her.

Appellant testified that Curley Davis asked him to rent the room for her in October. He admitted paying the rent on the room and that he spent an occasional night there, but denied he occupied the room. He stated that he had gone to the room at approximately 9 a.m. on January 9, 1963, that Curley Davis was already there, and that Leon Johnson, Clifton Weems and Irene Blackshear arrived shortly thereafter. Freddie Harrington also arrived some 30 to 40 minutes later and asked if he could "paper up some stuff." Curley Davis gave Harrington a razor blade and he began cutting a sheet of writing paper into small squares. He then took a balloon from his pocket, poured out a quantity of white powder which appeared to appellant to be heroin, and folded the powder into the small squares of paper. Although Harrington offered appellant some of the powder, he refused it. Appellant then took the surplus scraps of paper to an incinerator located at the rear of the building and burned them. When he returned to Room 7, Harrington had left and appellant saw no evidence of any narcotics remaining in the room. Clifton Weems had passed out in a chair and appellant took him into the bathroom and revived him with cold water. When appellant returned to Room 7, Curley Davis informed him that Harrington was out in front. Appellant went to the window, and Harrington asked if he could borrow $15 for a few minutes. Appellant threw a $5 bill and a $10 bill out the window, and Harrington picked them up, got into his car, and drove off. Appellant denied using narcotics on January 9, 1963, but stated that he had received a heroin injection in Richmond on the previous day.

The jury, under its power to determine the credibility of a witness, had the right to accept or reject any or all of appellant's "explanation." It is, of course, quite evident that they rejected it almost completely. If the appellant were to accept this fact, then there would be but little for him to argue in support of a reversal of the judgment.

Appellant first contends that the trial court committed prejudicial error by admitting into evidence, over his objection, the 13 bindles of heroin taken from Room 7. Appellant asserts that these items were the product of an illegal

search which cannot be deemed incidental either to his arrest or to the arrest of Curley Davis.[1]

In order to be "incidental to an arrest," a search must be limited to the premises where an arrest is made, must be contemporaneous with said arrest, must have a definite object, and must be reasonable in scope. (*People* v. *Cruz* (1964) 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889].) In the present case, it is apparent that the search of Room 7 was not incidental to appellant's arrest, since said arrest occurred several blocks from the premises at 1422 Brush Street, and the search was not contemporaneous therewith. (*People* v. *Cruz, supra,* at p. 865.)

However, appellant's contention that the search was not incidental to the arrest of Curley Davis cannot be upheld.

In *People* v. *Aleria* (1961) 193 Cal.App.2d 352 [14 Cal. Rptr. 162] (cert. denied, 374 U.S. 832 [83 S.Ct. 1876, 10 L.Ed.2d 1055]), the defendant was arrested in the lobby of a hotel by a police officer who had observed him and concluded that he was under the influence of narcotics. The officer then asked the defendant if he lived in the hotel, and the hotel clerk replied that he was in Room 143. When the defendant made no response, the officer took the key from his hand, escorted him up one flight of stairs and 20 or 30 feet down a hall to Room 143, unlocked the door with the defendant's key, searched the entire room, and found seven capsules of heroin and a hypodermic outfit. The court held that the search was clearly incidental to the arrest in point of both time and place, and that the contraband was therefore properly received in evidence.

In his argument, appellant ignores the fact that the arresting officer told Miss Davis that he wanted to take a look at *her* room and that she immediately led him to Room 7, where both appellant's and her clothing were in the closet.

[1]It may be noted that respondent makes some attempt to dispose of this argument on the ground that the issue is res judicata by virtue of this court having previously denied appellant's application for a writ of prohibition restraining the superior court from proceeding with his trial. Respondent concedes, however, that the writ was denied without opinion. It is the general rule that the denial without opinion of an alternative writ adjudges nothing except that, for reasons sufficient to the court, that writ should not issue, and that said denial is not res judicata of the legal issues presented by the application unless the sole possible ground of denial was that the court acted on the merits or unless it affirmatively appears that such denial was intended to be on the merits. (*Confidential, Inc.* v. *Superior Court* (1958) 157 Cal.App.2d 75, 78-79 [320 P.2d 546].) Since respondent has made no such showing, appellant is accordingly entitled to raise the issue on this appeal.

Under such circumstances, the officer was entitled to conclude that Room 7 was under her immediate control, and it follows that a search of said room was a proper incident of her arrest.

 Appellant next objects to the admission into evidence of the Nalline test administered to him on the day of his arrest. The record shows that appellant's counsel indicated early in the trial that he would object to the admission of this evidence and that he did not intend to base his client's defense upon ignorance of the character of narcotic substances. At a subsequent stage in the proceedings, the prosecutor took the position that the results of the test were admissible to show both knowledge of the nature of the narcotics found in Room 7 and knowledge of their presence in the room. Appellant's counsel then indicated a willingness to concede that his client was aware of the narcotic nature of heroin, as such, but not that he was aware of the narcotic nature of the specific items found in Room 7. The court ruled in favor of the admissibility of the results of the Nalline test, and instructed the jurors that they should consider such evidence only insofar as they found it to have a bearing upon "the knowledge of the defendant as to the presence of those certain objects which are the subject of that charge and of their narcotic character or nature, if any." Dr. James Terry, staff physician for the Alameda County Sheriff's Department, then testified that he had administered the test to appellant between 5 and 6 p.m. on the day of his arrest and that the results of the test indicated that he was then under the influence of a narcotic. Appellant thereafter took the stand and, as above noted, admitted that he recognized the substance which Freddie Harrington allegedly brought to Room 7 as heroin.

Appellant now contends that since he admitted that he recognized the narcotic substance found in Room 7 and based his defense solely on the theory that he did not knowingly have that substance in his possession, the results of the Nalline test were irrelevant to the issues before the court and ought to have been excluded. He further asserts that the admission of the evidence was clearly prejudicial since the jury may well have convicted him of the crime of use of narcotics rather than possession of narcotics, as charged in the information. This contention is without merit.

Although it is true that appellant ultimately admitted that he recognized the substance in Room 7 as heroin, it must be remembered that he did not so testify until *after* the results

of the Nalline test had been admitted into evidence. It would constitute the purest form of speculation to assume that appellant would have testified in the same manner had the results of the test been excluded from evidence. Particularly is this so in view of appellant's counsel's previously announced position.

■ Knowledge of the narcotic nature of the object possessed constitutes an essential element of the crime of possession of narcotics, and the prosecution must carry the burden on this issue even if the defendant has not denied having such knowledge. (*People* v. *Horn* (1960) 187 Cal.App.2d 68, 74-75 [9 Cal.Rptr. 578] (cert. denied, 368 U.S. 846 [82 S.Ct. 76, 7 L.Ed.2d 44]); *People* v. *Basler* (1963) 217 Cal.App.2d 389, 398 [31 Cal.Rptr. 884].) In *People* v. *Williams* (1958) 164 Cal.App.2d Supp. 858 [331 P.2d 251], a prosecution for the crime of illegally using, being under the influence of, or being addicted to the use of narcotics, the court upheld the introduction into evidence of the results of a Nalline test which had been administered to both defendants. The court, in so holding, pointed out that the testimony established both that the test was medically reliable and that it had gained general acceptance by those familiar with its use. ■ Although the results of a Nalline test appear never to have been offered as proof of possession, as opposed to use, of narcotics, it has been suggested that "[s]ince knowledge of the narcotic character of the substance is an essential element of the crime of unlawful possession of narcotics, the Nalline test might be employed to refute the defendant's allegation that he was ignorant of the character of the substance found in his possession." (48 Cal.L.Rev. 282, 285.)

■ We have here medically reliable proof (the Nalline test) that appellant was under the influence of narcotics several hours after he left a room in which narcotics were found, and the packaging of which he had observed, participated in and permitted in his quarters, all of which evidence amply supports the inference not only that he used those narcotics, but that he knew of their presence and narcotic character.

Appellant asserts that the prosecutor was guilty of prejudicial misconduct in his examination of appellant, and in his argument to the jury. We have carefully examined the record and are satisfied the appellant suffered no prejudice in either respect.

■ Appellant asserts that the court erred in instructing

the jury on the law of accomplices and aiding and abetting. He does not challenge their correctness as abstract statements of law, but asserts only that these instructions were not applicable to or supported by any evidence in the record. This argument is untenable. Room 7, in which the 13 bindles of heroin were found, was shown to have been rented and paid for by appellant. He was admittedly present in the room on the morning of his arrest when heroin was packaged by Freddie Harrington and administered to at least one individual. Appellant also claimed that he threw currency out the window to Harrington at the approximate time when the officers observed an unidentified arm throw a white object out the window. Appellant subsequently left the room in the company of Curley Davis and provided her with the keys to the building. There can be no doubt that this evidence was more than sufficient to support a finding that appellant was operating in concert with one or more others to possess and conceal heroin.

Appellant's contention that the court ought to have given his proposed instructions that mere presence at the scene of an offense is not sufficient to sustain a finding of guilt is invalid. We have examined the record and find that the jury was properly instructed as to the pertinent legal principles involved and that the requested instructions were merely a restatement of those principles in different language than that adopted by the court. (*People* v. *Chapman* (1962) 207 Cal.App.2d 557, 578-580 [24 Cal.Rptr. 568].)

Judgment affirmed.

Agee, J., and Taylor, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 3, 1965. Peters, J., was of the opinion that the petition should be granted.