[Crim. No. 12384.   Second Dist., Div. Three.   Apr. 24, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. RAYMOND ADAME, Defendant and Appellant.

Raymond Adame, in pro. per., Morton Herbert, under appointment by the Court of Appeal, and Herbert & Levine for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Suzanne E. Graber, Deputy Attorney General, for Plaintiff and Respondent.

FRAMPTON, J. pro tem.*—Defendant was charged by information filed by the District Attorney of Los Angeles County with the crime of violation of section 11500.5 of the Health and Safety Code (possession for sale of heroin), with a prior conviction of assault with a deadly weapon, a felony, and with having served a term of imprisonment therefor in the state prison. His motion for dismissal of the information under the provisions of section 995 Penal Code was denied and he entered a plea of not guilty to the charge. Although the statement of the district attorney upon the jury waiver proceedings indicates that the defendant, at the time he entered his plea of not guilty, also denied the truth of the allegation of prior conviction, the minutes of the court do not bear this out. A trial by jury was duly waived and by stipulation the cause was submitted for trial upon the evidence taken at the preliminary hearing with the right reserved to both sides to present additional testimony.

At the conclusion of the trial, defendant was adjudged guilty of violation of section 11500 of the Health and Safety Code, a lesser but necessarily included offense within that charged. A probation hearing was had, probation was denied, defendant's motion for a new trial was denied, and he was sentenced to state prison. No finding was made upon the allegation of prior conviction of felony. The appeal is from the judgment of conviction.

### The Facts

On November 24, 1965, Vincent J. Maga, a police offiʒer for the City of Los Angeles attached to the narcotics division, accompanied by three fellow officers and one David Ponce Martinez, went to the address at 2207 East 1st Street in the City of Los Angeles to conduct a narcotics investigation at the

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

room occupied by Martinez. Upon arrival they were admitted, with the consent of Martinez, to room number 6 on the first floor of the building, the room occupied by him. The officers were dressed in plain clothes.

About 10 minutes after the officers had entered room number 6 and while they were still engaged in their investigation therein, there was a knock on the door, the door was opened by Officer Maga and the defendant was observed standing at the doorway. The time was about 2 o'clock in the afternoon.

When Officer Maga opened the door the defendant said, "Hi. What's doing?" And Maga replied, "Nothing." At this time officer Maga identified himself as a police officer and asked the defendant what he wanted. The defendant replied, "I just 'geezed'[1] upstairs, and my outfit is up in my room." During this conversation Maga observed that the defendant's speech was slurred, his motions were very slow, his eyes were pin-pointed and showed no reaction to light, he had numerous scab formations and puncture wounds on the inner part of both arms, and a puncture wound on the inner left arm that had blood running from it.

Officer Maga placed the defendant under arrest at this time and told him that he had the right to remain silent, the right to counsel, and that anything he said could be used against him in court. Maga, an experienced narcotics officer, was of the opinion at the time of the arrest that the defendant was under the influence of an opiate, probably heroin, and it was for this charge that he placed him under arrest. (See Health & Saf. Code, § 11721.)

After defendant was placed under arrest, Officer Maga asked him if he had any "junk" up in his room and defendant stated, "No, just my outfit." In talking to one of the officers the defendant had mentioned room number 25. Officer Maga heard this room number mentioned and asked the defendant, "You are staying in room twenty-five?" And the defendant replied, "Yes." Officer Maga then said, "Let's go up to room twenty-five." He then said, "Do you have a key to your room? Defendant replied, "yes," and handed Officer Maga the key to room 25. Prior to this defendant had been searched, but the key to his room had not been removed from his possession. No restraint was placed upon defendant such

---

[1]According to Maga the word "geezed" is commonly used by persons engaged in the illicit use of narcotics and means that one has "taken an illegal injection of narcotics, heroin."

as handcuffs. Maga testified that room 25 was situated on the second floor of the building, directly above room number 6 and that he walked a distance of approximately 15 or 20 feet after leaving room 6 in order to reach room 25. After entering room 25 Officer Maga observed, ''A hype outfit spread on top of the dresser, and then laying on the bed in what was a portion of a brown bag we found six multi-colored balloons, each containing white powder resembling heroin. We found in the center dresser drawer numerous balloons, a teaspoon, funnel, and a blackjack.'' Upon analysis by the forensic chemist for the police department it was found that the six balloons contained a total of 5.40 grams of heroin.

At the trial defendant took the witness stand and testified that the distance from the doorway of room 6 to the foot of the stairs leading to the second floor of the building is 50 feet, that there are 12 to 15 steps leading from the first to the second floor of the building, and then 3 or 4 steps from the landing on the second floor to the door of room 25 which he occupied. He testified that with the habit for narcotics which he had at the time of his arrest he would have used the entire amount of heroin found in his room in one injection. He admitted having been convicted of the crime of assault with a deadly weapon, a felony, the crime alleged in the information as a prior conviction of felony. He testified further that he went to visit Martinez in room 6 to ask him for the name of a man who might repair a television set that Martinez had given him two days previously. He knocked on the door of room 6 and an officer other than Maga opened the door; Officer Maga was seated inside the room with a notebook on his lap. It was dark in the hallway in front of room 6 but one could see inside the room to a certain degree. He testified that as of the time of his arrest he was taking about three fixes a day. There were six balloons on top of his bed under the pillow, each containing one-half gram of heroin for his own use. There were empty balloons, around three or four, in his dresser drawer which he kept to put the ''stuff'' in ''for myself . . . they were just extra balloons laying there.'' When he bought the narcotics found in the six balloons it was already packaged, he did not place it in the balloons. He had never sold narcotics nor had he ever packaged narcotics for sale. No testimony was elicited from the defendant touching his consent or lack thereof for Officer Maga to search his room.

## Assignments of Error

Defendant contends that (1) the search was not valid as

incidental to the arrest, (2) the defendant did not consent to the search, and (3) defendant was not informed of his rights under the Fourth Amendment to the Constitution of the United States.

### The Law as Applied to the Facts

■ It is only unreasonable searches and seizures which come within the constitutional interdict. The test of unreasonableness cannot be stated in rigid and absolute terms. Each case is to be decided on its own facts and circumstances. It has been clearly recognized that the search incident to arrest may, under appropriate circumstances, extend beyond the person of the one arrested to include the premises under his immediate control. Nor can support be found for the suggestion that the search could not validly extend beyond the room in which the arrest takes place. (*Harris* v. *United States,* 331 U.S. 145, 151, 152 [91 L.Ed. 1399, 1405, 1406, 67 S.Ct. 1098, 1101, 1102].) What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are unreasonable searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case. (*United States* v. *Rabinowitz,* 339 U.S. 56, 63 [94 L.Ed 653, 659, 70 S.Ct. 430, 434].) Speaking of reasonable or probable cause for an arrest it has been said, ''There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the case.'' (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) It has been held under varying factual situations that where the arrest occurred upon the public street or sidewalk, a search of the room or dwelling house of the suspect, without consent, and in the absence of a search warrant, may not be upheld. (*People* v. *Henry,* 65 Cal.2d 842, 845 [56 Cal.Rptr. 485, 423 P.2d 557]; *People* v. *Cruz,* 61 Cal.2d 861, 865 [40 Cal.Rptr. 841, 395 P.2d 889]; *People* v. *King,* 60 Cal.2d 308, 311 [32 Cal.Rptr. 825, 384 P.2d 153]; *Tompkins* v. *Superior Court,* 59 Cal.2d 65, 67 [27 Cal.Rptr. 889, 378 P.2d 113]; *Hernandez* v. *Superior Court,* 143 Cal. App.2d 20, 24 [299 P.2d 678].) However, in laying down the guidelines for the making of a search incidental to an arrest our Supreme Court has said, ''a search is not 'incidental to an arrest' unless it is limited to the premises where the arrest is made; is contemporaneous therewith; has a definite object; and is reasonable in scope.'' (*People* v. *Cruz, supra,* p. 866.)

Where a defendant was arrested in the lobby of his hotel for being under the influence of narcotics, a search of his room one flight upstairs and 20 to 30 feet down the hall, without a warrant but immediately after the arrest, was held to be a lawful search incidental to the arrest. (*People* v. *Aleria*, 193 Cal.App.2d 352 [14 Cal.Rptr. 162].) Where a defendant was arrested within the common entrance to a rooming house for being under the influence of narcotics and was immediately taken to a room on the second floor of the premises, a room occupied by the defendant, and upon a search of the room narcotics were found, it was held that the search was proper as incidental to the arrest. (*People* v. *Davis*, 231 Cal. App.2d 180, 185 [41 Cal.Rptr. 617].) An arrest made on a common walkway between two apartment buildings justified the search of the defendant's apartment on the second floor of one of the buildings, the court holding that the search was limited to the premises where the arrest was made and that the search was incidental to the arrest. (*People* v. *Rodriguez*, 238 Cal.App.2d 682, 688, 690 [48 Cal.Rptr. 117].)

The evidence here discloses that the defendant was placed under arrest a few seconds after he had left the common hallway of the rooming house and stepped inside of room number 6. He was under the influence of narcotics at the time and while Officer Maga could have relied solely upon his opinion evidence as to the cause of defendant's condition without a search, he was not obligated to do so. He was entitled to search the premises where the arrest was made if for no other reason than to find the implements used by the defendant which caused his condition and thus to verify or corroborate his opinion. (See *People* v. *Sandoval*, 65 Cal.2d 303, 308 [54 Cal.Rptr. 123, 419 P.2d 187].) Under the circumstances here shown there was probable cause for defendant's arrest, the search which ensued was incidental to the arrest, it was limited to the premises where the arrest was made, it was contemporaneous therewith, it had a definite object, and was reasonable in scope. (*People* v. *Cruz, supra*, p. 866.)

Having determined that the arrest was made upon probable cause and that the search was a proper incident thereof, it becomes unnecessary to evaluate the question of consent for the search.

Defendant has been represented on this appeal by court appointed counsel; he has also filed a brief in propria persona. He has raised and argued the same questions in his brief as

are raised in the brief of his counsel, and these questions are sufficiently answered herein without further comment.

The judgment is affirmed.

Ford, P. J., and Moss, J., concurred.

A petition for a rehearing was denied May 25, 1967, and appellant's petition for a hearing by the Supreme Court was denied June 21, 1967.