[Crim. No. 13210.   Second Dist., Div. Four.   Feb. 28, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. IGNACIO BARRERA MARQUEZ et al., Defendants and Appellants.

Richard H. Levin and Donald F. Roeschke, under appointments by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard D. Huffman, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—Appellants Marquez and Valdivia, with two other persons, were jointly charged with possession of heroin for sale (Health & Saf. Code, § 11500.5) and possession of marijuana for sale (Health & Saf. Code, § 11530.5). A jury was waived and, by stipulation, the People's case was submitted upon the transcript of the preliminary examination. The only witness at the trial was the arresting officer, called by the defense. The court found appellants and their codefendant Walters guilty as charged. The appeals are from the judgments.

The skeleton facts are that on December 15, 1965, Los Angeles police officers, without a warrant, but upon the reports of informers, went to 4639 Gratian Street where, from a distance, they observed men carrying something from a pickup truck into a shed immediately behind the truck. The officers approached and found Marquez, Valdivia and Walters, whom they eventually arrested. In the shed they found 128 kilo blocks of marijuana and 62 grams of heroin.

### Legality of the Arrest

Valdivia's first contention is that his arrest and the subsequent search of the shed were illegal, so that the evidence obtained thereby is inadmissible under the familiar exclusionary rule.

At the preliminary examination Police Sergeant Camacho testified that on December 8, 1965, a state narcotic agent told him that a tested informant had reported that a Mexican named ''Mike'' was dealing in narcotics in East Los Angeles and using a late model light-colored Chevrolet. On December 15 the agent supplied the additional information that ''Mike'' had been arrested in Los Angeles three or four months before that with several ounces of heroin in his possession. Examination of police records indicated that appellant Miguel Valdivia was probably the person referred to.

The agent also reported that ''Mike'' had several Ford Ranchero pickup trucks which he used in his narcotics business.

On December 15 a second informant told Camacho that Mike Valdivia was selling both marijuana and heroin at a place in the 4600 block of Gratian Street, and that Valdivia used a white 1959 or 1960 Chevrolet and two Rancheros. Camacho knew that this informant had previously worked with Sergeant Appier. To verify the reliability of that informant Sergeant Camacho inquired of Appier, who replied that this informant '' 'had made him approximately four cases, and that the persons had been convicted.' ''

On the same day Camacho went to Valdivia's residence on Belden Street and observed a light-colored Chevrolet parked in front.

At 1 p.m. on December 15 Camacho saw Valdivia walk to the rear of the residence at 4639 Gratian, and enter a shed, after which he drove away in a light-colored Ranchero.

At 6:45 p.m. the officers returned to Gratian Street. From a distance of about 100 feet they saw two Rancheros backed up.

to the shed at the rear of the property. Through field glasses Camacho saw persons carrying articles into the shed.

After a period of observation (the time is not stated) the light went out in the shed. The officers approached and appellants tried to run away, but were caught. Camacho shone his flashlight in the bed of one of the pickup trucks and observed what appeared to be marijuana debris. He shone his light into the window of the shed and saw two brown paper wrapped packages which he believed to be kilo blocks of marijuana. Keys were removed from the pocket of Valdivia and used to unlock the shed.

Inside the shed the officers recovered marijuana and 62 grams of powdered heroin packaged in rubber containers. In one of the Rancheros were found supplies commonly used in packaging narcotics. In response to the officer's questions, Valdivia admitted that the narcotics belonged to him.

The information possessed by Sergeant Camacho when he approached appellants constituted reasonable cause to believe that Valdivia had committed a felony.

Sergeant Camacho had been told both by a state narcotics agent and by another informant that ''Mike'' was selling heroin at the Gratian Street address; and although the sergeant had had no previous experience with the latter informant, a fellow officer had vouched for the reliability of that informant's reports. Valdivia contends, however, that this is not enough, for the People failed to produce as a witness Sergeant Appier, the officer who knew that the lay informer was reliable.

An officer who makes an arrest upon the instructions of another officer may be acting reasonably, but in such a case proof only that such instruction was given is not enough to make admissible the evidence procured by the arresting officer. In *People* v. *Lara,* 67 Cal.2d 365, 374 [62 Cal.Rptr. 586, 432 P.2d 202], the Supreme Court pointed out that ''the prosecution was also required to show (*People* v. *Pease* (1966) 242 Cal.App.2d 442, 450 [51 Cal.Rptr. 448]) that the officer who initiated the request [to arrest Lara] had reasonable cause himself to believe that Lara had committed a felony. . . .''

In *People* v. *Pease,* the decision cited in *Lara, supra,* the court reviewed the authorities and concluded thus: ''From the above authorities we think the following principle can be distilled: That the mere fact that information acquired by an arresting officer comes from a fellow officer as a hearsay state-

ment not based on the latter's personal observations does not justify the conclusion that reliance thereon is reasonable in the absence of evidence showing that the informant originally transmitting the information to the police was reliable or that such information had its source in official police files or records. Absent the conditions indicated above, such statements of a fellow officer, being hearsay on hearsay, cannot by themselves constitute reasonable cause or reasonable grounds for police action of the kind here involved.''

In the case at bench, unlike *Lara*, the officer who assumed the responsibility for the arrest testified that he had obtained information directly from an informant who claimed to have knowledge of the crime under investigation. This report was by itself sufficient to justify the arrest if it came from a source of tested reliability. (*People* v. *Prewitt*, 52 Cal.2d 330, 337 [341 P.2d 1].) The only additional data needed was that the informant had proven himself reliable in the past. This was the link supplied from within the department, by Sergeant Appier's statement to Camacho. This information which Sergeant Appier transmitted orally to Camacho was the kind which might have been set down by Appier in police files or records. But there is no evidence of this, and in any event it appears that Appier was speaking of what he knew of his own knowledge, not quoting a record.

In *Pease*, the information supplied by the fellow officer was the address where the defendant was to be found. The opinion points out that there was no evidence that the fellow officer had obtained this information from official files or his own observation (242 Cal.App.2d at p. 448). The rule, as expressed in *Pease*, expressly excepts information based upon the fellow officer's personal observation. In the case at bench the officer responsible for the arrest acted upon hearsay from two sources: the informant who purported to know about the crime, and the fellow officer who purported to know about the reliability of the informer. Each was a primary source, not a relator of gossip. The ''hearsay on hearsay'' problem of the *Pease* case does not arise here.

The admissibility of Sergeant Camacho's evidence is supported by the decision in *People* v. *Bates*, 163 Cal.App.2d 847 [330 P.2d 102]. In that case Nancy Francis gave information to officers Kerrigan, Steffensen and Casey, leading to the arrest of defendant. Officers Steffensen and Casey had had no prior experience with Miss Francis; but Officer Casey testified that Officer Kerrigan had said that he had known her for

several years and she had given reliable information on numerous occasions. Officer Kerrigan did not testify. Officers Casey, Steffensen and Kerrigan participated in the arrest. In holding that the testimony of Officer Casey established the legality of the arrest, the court said (at p. 852): "As long as the informer was known to one of the officers of the arresting party to be reliable, or as long as he communicated the knowledge he had to the other officers in the official line of duty, the rule of the Dewson case is satisfied."

The "Dewson case" refers to *People* v. *Dewson,* 150 Cal. App.2d 119 [310 P.2d 162], cited earlier in the *Bates* opinion for the point that an arrest may not be made upon information from a source not known to be reliable.

The case at bench differs from *Bates* only in that the officer who knew the reliability of the informant did not participate in the arrest. This distinction is not controlling. The *Bates* arrest would have been no less reasonable had officer Kerrigan failed to go along. The legal issue is how the existence of probable cause may be proved. The significance of the *Bates* decision is that the reliability of the informant, and thereby the reasonableness of acting upon the information, was proved by the testimony of Casey, quoting Kerrigan. In the case at bench, the testimony of Sergeant Camacho, quoting Appier, supports the finding that the arrest was legal.

 Upon cross-examination Camacho was asked to name his informant and he declined to do so upon the ground that naming him would destroy the informant's usefulness and imperil his life. This testimony supports the trial court's finding that the refusal was justified under Code of Civil Procedure sections 1881, subdivision 5,[1] and 1881.1. The fact that the officer stands upon this statutory privilege does not make it necessary to disregard or strike his testimony as to the information received. (*Martin* v. *Superior Court,* 66 Cal.2d 257 [57 Cal.Rptr. 351, 424 P.2d 935].)

## The Search

 The search of the shed and the pickup truck was a proper incident of Valdivia's arrest. At the time the officers approached, the trucks were "backed up to the small shed." Valdivia was one of the persons in the group who were mov-

[1]Code of Civil Procedure section 1881, subdivision 5: "A public officer can not be examined as to communications made to him in official confidence, when the public interest would suffer by the disclosure."

For the present law, since January 1, 1967, see Evidence Code sections 1041, 1042.

ing objects from the rear of one truck into the shed. Valdivia was standing at the door of the shed when Camacho walked up to him and said, "Police officers." The key to the shed was in Valdivia's pocket.

In *People* v. *Cruz,* 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889], the Supreme Court declared "that a search is not 'incidental to an arrest' unless it is limited to the premises where the arrest is made; is contemporaneous therewith; has a definite object; and is reasonable in scope."

The search of the shed and the vehicles directly alongside of it meets that test. As the officers approached, the persons to be arrested were moving articles which, on the basis of prior information, the officers could reasonably expect to contain narcotics. Visual inspection, prior to the search, revealed marijuana debris in a truck, and packages of a type characteristic of marijuana bricks in the shed. The object of the search was to obtain evidence of the very offense which the officers reasonably believed was being committed in their immediate presence.

The fact that the arrestee was, at the moment of arrest, outside the four walls of the shed, does not, by itself, preclude a search of the shed. (*People* v. *Rodriguez,* 238 Cal.App.2d 682, 688 [48 Cal.Rptr. 117]; *People* v. *Pressley,* 242 Cal.App. 2d 555, 559 [51 Cal.Rptr. 563]; *People* v. *Adame,* 250 Cal. App.2d 380, 385 [58 Cal.Rptr. 687].)

### *Valdivia's Extrajudicial Statements*

Valdivia's attorney contends he is entitled to a reversal because at the trial, held on September 16, 1966, his extrajudicial statements were received in evidence without a showing that he had received the warnings required by the decision in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. Under the circumstances shown by the record here, that point is not available as a ground of reversal.

The preliminary examination in this case took place on December 21, 1965, which was prior to the date of the *Miranda* decision (June 13, 1966). Sergeant Camacho then testified that immediately following the arrest, he had advised the appellants "You are both entitled to an attorney during any time of the investigation. You both have the right to remain silent, and anything you say may be used against you." Both said they understood their rights. Thereafter Valdivia freely and voluntarily, in answer to questions,

admitted that the narcotics were all his. About two hours later at the police headquarters he admitted " 'You have got me good this time.' "

No evidence was offered to contradict or impeach this testimony.

At the trial the parties stipulated that the transcript of the preliminary examination would be received in evidence as the People's case in chief, "subject to any objections."[2] Valdivia's attorney made no objections to the introduction of his extrajudicial statements, either at the preliminary hearing or at the trial. All of the objections which he did make were based upon the claimed illegality of the arrest and search and the refusal of the officer to name his informant.

The testimony of Sergeant Camacho as to the warning and advice which the officers gave at the time of the arrest was sufficient foundation for the admission of Valdivia's statements under the law applicable at the time of the preliminary examination. The additional requirement of the *Miranda* rules, namely that the prisoner be advised that if indigent a lawyer will be appointed to represent him, applies only to trials beginning on or after June 13, 1966. (*People* v. *Rollins,* 65 Cal.2d 681, 686 [56 Cal.Rptr. 293, 423 P.2d 221].) Thus, had Valdivia's attorney made the objection at his trial in September 1966, the extrajudicial statements should have and doubtless would have been excluded.

This is not a case like *People* v. *Hillery,* 62 Cal.2d 692, 711 [44 Cal.Rptr. 30, 401 P.2d 382], where it was said no objection was necessary to invoke a ground of exclusion which came into existence only after the trial. The trial here took place three months after the *Miranda* rules became known.

Defendant's extrajudicial statement was shown to have been voluntary, and thus does not come within the rule of automatic exclusion which applies to coerced statements in such cases as *People* v. *Underwood,* 61 Cal.2d 113, 121, 126 [37 Cal.Rptr. 313, 389 P.2d 937]. ▮ In cases tried after the adoption of the applicable exclusionary rule, objections upon the ground that the interrogation was conducted without proper warning and waiver of the rights to silence and to

---

[2]This stipulation is ambiguous in that it fails to indicate whether they meant all objections made in the preliminary transcript or those to be made in the superior court. Such loose talk in the record can lead to unnecessary reversals and retrials, when an appellate court is disposed to give the defendant the benefit of the doubt. (See *People* v. *Griffin,* 250 Cal.App.2d 545, 549 [58 Cal.Rptr. 707].) The problem is obviated here because no appropriate objection was made on either occasion.

counsel may be waived. (*People* v. *Castro,* 257 Cal.App.2d 643 [65 Cal.Rptr. 62] (*Miranda* violation); *People* v. *Crooks,* 250 Cal.App.2d 788, 792-793 [58 Cal.Rptr. 39] (*Dorado* violation); see *People* v. *Doherty,* 67 Cal.2d 9, 14, fn. 4 [59 Cal.Rptr. 857, 429 P.2d 177] (*Dorado* violation).)

■ Valdivia's attorney not only failed to object, but he stipulated that the transcript containing this testimony should be received in evidence. It is a basic principle of appellate review that a party may not demand a new trial because the trial court received evidence to whose admission he expressly consented. (*People* v. *Ah Ton,* 53 Cal. 741; *People* v. *Schoon,* 177 Cal. 678, 684 [171 P. 680]; *People* v. *Feldkamp,* 51 Cal.2d 237, 241 [331 P.2d 632].) That principle applies here.

■ The willingness of Valdivia's trial attorney to stipulate to the use of the preliminary transcript does not suggest any lack of competence on the part of counsel. The record demonstrates that Valdivia had no defense unless the People's evidence could be excluded upon the theory of an unlawful search—a theory which was advanced vigorously both at the preliminary examination and at the trial. The exclusion of that defendant's statements to the officers would have aided him not at all in the trial court, as there was ample proof of guilt without the admissions. Though it would not have aided Valdivia for his trial attorney to have made the point, the new attorney who was appointed to assist him on this appeal argues it anyway in performing his duty to "argue all issues that are arguable." (See *People* v. *Feggans,* 67 Cal.2d 444, 447 [62 Cal.Rptr. 419, 432 P.2d 21].)

The admission of the extrajudicial statements, as a part of the preliminary transcript received by stipulation, does not entitle defendant to a new trial.

### Sufficiency of Evidence—Valdivia

■ The evidence of Valdivia's guilt is overwhelming and uncontradicted. The truck in which the marijuana debris and the packaging material were found had been parked in front of Valdivia's home a few hours before the arrest. Valdivia was carrying in his pocket the keys to the shed, to the two pickup trucks and the Chevrolet automobile which were at the scene of the arrest. The quantity of narcotics found, the packaging and the manner of storage, and the presence of other packaging materials, all tend to support the inference that the possession was for the purpose of sale.

■ Contrary to the contention of counsel there was evi-

dence to sustain the court's finding that in 1961, before the commission of this offense, Valdivia had been convicted in the United States District Court of the crime of illegal importation of marijuana, a felony. The reporter's transcript shows that after the court had decided the issue of guilt, counsel stipulated, in defendant's presence, as follows:

"MR. BROWN [deputy district attorney] : With reference to the prior, may it be stipulated at this time the finding may be made at the time of probation and sentence?

"MR. MATTHEWS [Valdivia's attorney] : Yes, certainly.

"MR. BROWN : From any applicable information given to the Court by either counsel, or supplied to the Court by either counsel; and the reading of the probation report?

"MR. MATTHEWS : So stipulated."

At the time Valdivia was sentenced the court announced its finding that the prior was true.

In view of the contention made by counsel this court has on its own motion augmented the record on appeal (rule 12(a), Cal. Rules of Court) by ordering the probation report transmitted and made a part of the record on appeal. That report incorporates an earlier probation report which relates Valdivia's background and lists the 1961 smuggling conviction, with the dates of the prison term served. Upon this showing there can be no doubt that the prior conviction was proved in conformity with the stipulation.

A stipulation, such as this one, is binding upon the defendant; and proof of the prior offense by the mode agreed upon is sufficient to support the finding. (*People* v. *Williams,* 223 Cal.App.2d 676, 679 [35 Cal.Rptr. 805].)

### *Marquez Appeal*

The conviction of Marquez must be reversed because of the lack of any substantial evidence to identify him as a possessor of the narcotics.

Sergeant Camacho did not recognize the persons he saw from a distance unloading the truck. He could not say that he saw Marquez enter the shed. Camacho testified that when he approached he observed that Marquez and Walters "were standing just to the rear of [Valdivia], also by the shed, and appeared to be dropping some tools or something into a large wooden box." There is no evidence that contraband was found in that box. Neither the shed nor any of its contents nor any of the motor vehicles was connected to Marquez in any way except by his presence. He made no incriminating extrajudicial statements. For all that appears, he was purely

a bystander. It is pure speculation whether or not he assisted in removing any contraband from the truck, or whether he aided Valdivia in any other way. There is no evidence that he was even aware of the presence of narcotics. Physical presence in the company of a possessor of narcotics is not enough. (*People* v. *Hancock*, 156 Cal.App.2d 305, 310 [319 P.2d 731]; *People* v. *Antista*, 129 Cal.App.2d 47 [276 P.2d 177].)

 When the police identified themselves Marquez attempted to flee with Valdivia. Flight may be evidence of consciousness of guilt but is such ambiguous conduct that, by itself, it is not even a ground for arrest. (*Wong Sun* v. *United States*, 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407]; *People* v. *Garrett*, 237 Cal.App.2d 701 [47 Cal.Rptr. 194].) The effort of Marquez to escape the police on this occasion does not add enough to make a circumstantial case against him here. As to appellant Marquez, the judgment is reversed.

As to appellant Valdivia, the judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied March 12, 1968, and the petition of appellant Valdivia for a hearing by the Supreme Court was denied April 24, 1968.