[Crim. No. 6951. First Dist., Div. Two. Nov. 22, 1968.]

THE PEOPLE, Plaintiff and Appellant, v. GEORGE J. POMPEI, Defendant and Respondent.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Karl S. Mayer, Deputy Attorneys General, for Plaintiff and Appellant.

Morgan & Moscone, Charles O. Morgan, Jr., and George R. Moscone for Defendant and Respondent.

TAYLOR, J.—The State appeals from an order granting respondent Pompei's motion to dismiss (Pen. Code, § 995) an indictment charging him with keeping and occupying premises for the purpose of bookmaking (Pen. Code, § 337a, subd.

2), recording and registering bets (Pen. Code, § 337a, subd. 4) and offering or accepting bets (Pen. Code, § 337a, subd. 6). The questions on appeal are: 1) the existence of reasonable or probable cause for the arrest without a warrant; 2) the lawfulness and reasonableness of the search of respondent's apartment; and 3) the sufficiency of the evidence presented to the grand jury to support each count of the indictment.

The transcript of the proceedings before the grand jury reveals the following facts: About 3 p.m. on July 6, 1966, Sergeant James Mullan had just arrested Mitchell Palioudakis for bookmaking at 940 B Potrero Avenue in San Francisco. Sergeant Mullan was in charge of the Bookmaking and Gambling Detail of the San Francisco Police Department and with 10 years' experience in the field, qualified as an expert of the paraphernalia and devices used by bookmakers in San Francisco.

While lawfully searching the premises at 940 B Potrero Avenue incident to the arrest of Palioudakis, Mullan found a sheet of paper identifying a person by the name of "Barney" as a "runner"[1] and a "run-down" on a count sheet listing the bets placed on Barney's account. While Sergeant Mullan was busily examining and gathering the bookmaking paraphernalia at the Potrero Avenue address, the telephone rang a number of times. Mullan answered the telephone and purported to accommodate the callers,[2] including accepting bets from some of them. One caller responded to Sergeant Mullan's "Hello" by saying: "This is Barney. How are things going." Mullan replied that things were going well but there were problems and asked Barney to leave a number where he could be reached. Barney gave the number EXbrook 2-0642. Mullan checked the number with the telphone company and ascertained that it was listed to George Pompei at 480 Vallejo Street in San Francisco.

Shortly after 4 p.m. the same day, Mullan and two other officers proceeded to the Vallejo Street address, an apartment house. While the other officers watched apartment No. 9, Mullan went to the manager's apartment and from there placed a

---

[1] In a bookmaking operation, a runner is one who arranges for bets to be made anonymously by others (who use a code name and make the bets on the runner's account) and who is financially responsible to the bookmaker for all bets made on his account.

[2] Under the circumstances, it was not improper for the police officer to answer the telephone and purport to accommodate the callers (*People* v. *Sandoval*, 65 Cal.2d 303 [54 Cal.Rptr. 123, 419 P.2d 187]; *People* v. *Malotte*, 46 Cal.2d 59 [292 P.2d 517]).

telephone call to the EXbrook number provided by Barney. The same male voice Mullan had heard before answered and identified himself as Barney. Mullan then arranged to immediately meet Barney at the nearby corner of Columbus and Broadway. Mullan then went downstairs and joined the other two officers outside the door to apartment No. 9. A minute or two later, a man, subsequently identified as respondent, stepped out of apartment No. 9. Mullan and the other officers took out their badges and identified themselves. Mullan said: "Barney, I am Sergeant Mullan and I am on a bookmaking investigation. You are under arrest, and at this time we advise you of your rights, etc." The man replied: "Who are you?" Mullan recognized the voice as that of Barney to whom he had talked on the phone twice earlier that day. Mullan again identified himself and asked: "Who are you?" Respondent replied: "I am George Pompei."

Thereafter, Mullan said: "Let's got back in your place. Is your wife inside and is she dressed?" After respondent indicated that his wife was inside, Mullan said: "Let's go. We are going to clear this up now." Respondent then took the apartment key from his pocket and opened the door. As the door opened, Mullan smelled smoke. He pushed respondent out of the way and rushed to the kitchen, which was immediately back of the door. He saw papers burning in the sink and turned on the faucet to extinguish the fire. The half-burned papers were "pay and collect sheets," namely, records of current and past bets. On the desk in the living room, the officers found a list of names identical to one found earlier at the Palioudakis residence and near the telephone, a piece of paper with Mr. Palioudakis' telephone number at 940 B Potrero Avenue. Other bookmaking paraphernalia were found in the desk and included a portion of ledger in which older bets were registered.

Respondent first contends that Mullan had no reasonable or probable cause to arrest him. As the arrest and resulting search were made without a warrant, the burden was on the prosecution to show proper justification (*People* v. *Cruz*, 61 Cal.2d 861, 865 [40 Cal.Rptr. 841, 395 P.2d 889]; *Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23]). A peace officer may make an arrest without a warrant whenever "he has reasonable cause to believe that the person to be arrested has committed a felony" (Pen. Code, § 836). Reasonable or probable cause exists when the facts and circumstances within the knowledge of the officers at the moment

of arrest are sufficient to warrant a prudent man in believing that the defendant has committed an offense. The question of probable cause to justify an arrest without a warrant must be tested by the facts which the record shows were known to the officers at the time the arrest was made (*People v. Talley*, 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564]).

 There is no exact formula for determining reasonable cause for arrest; each case must be determined on its own facts and circumstances, and on the total atmosphere of the case (*People* v. *Ketchel*, 59 Cal.2d 503, 526 [30 Cal.Rptr. 538, 381 P.2d 394].)

 Respondent here contends that Mullan had no reasonable basis for believing that he was Barney,[3] as he was arrested immediately after he came out the door of his apartment and before he had said anything. Respondent argues that the identification of his voice as Barney's did not occur until after the arrest when he spoke to Mullan.

Here, a few moments after Mullan had arranged to meet "Barney" nearby, respondent came out the door of apartment No. 9, at 480 Vallejo Street, the address listed for the telephone number given to the officer by "Barney." Although the record indicates that the officers informed respondent that he was under arrest as soon as he came out the door, they repeated their identification and clearly manifested their intent of taking him into custody a second time, immediately after respondent spoke to them. In view of the almost simultaneous occurrence of the arrest and respondent's first words, we think to find an absence of probable cause under the particular circumstances, on the ground suggested, would be an indulgence in legal technicalities. Only a few seconds elapsed between the time respondent stepped out the door and the time he answered the officer's question. Respondent's identification as "Barney" was complete as soon as he spoke and Mullan recognized his voice. The facts leading to the arrest were based on Mullan's personal knowledge and aural perception. Respondent's physical and temporal proximity to the apartment occupied by Barney were sufficient under the circumstances and atmosphere of this case to lead to the conclusion that Mullan reasonably believed that respondent was

---

[3]The only question raised relates to the matter of identity. Respondent apparently does not dispute that the items found at the Palioudakis residence and Barney's subsequent telephone call provided a sufficient basis for a reasonable belief that Barney had committed felony bookmaking offenses in violation of section 337a of the Penal Code.

Barney and acted reasonably in arresting him.[4] *People* v. *White,* 231 Cal.App.2d 82 [41 Cal.Rptr. 604], cited by respondent, is distinguishable as therein, the only information connecting the defendant with the stolen automobile came from an unreliable informer. We hold, therefore, that Mullan had reasonable and probable cause to arrest respondent. As the arrest was lawful, we turn next to the question of the search of respondent's apartment.

▉ Respondent next argues that the entry and search of his apartment after the arrest exceeded the lawful and reasonable bounds of a search incident to a lawful arrest. We cannot agree.

▉ A search can be incident to an arrest only if it is substantially contemporaneous with the arrest and confined to the immediate vicinity of the arrest (*James* v. *Louisiana,* 382 U.S. 36, 37 [15 L.Ed.2d 30, 31, 86 S.Ct. 151]; *Stoner* v. *California,* 376 U.S. 483, 486 [11 L.Ed.2d 856, 859, 84 S.Ct. 889]). In laying down the guidelines for the making of a search incidental to an arrest, our Supreme Court has said that such a search must be: 1) limited to the premises where the arrest is made; 2) contemporaneous with the arrest; 3) have a definite object; and 4) be reasonable in scope (*People* v. *Cruz,* 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889]).

▉ Respondent, relying on *People* v. *Cruz, supra,* and *People* v. *Henry,* 65 Cal.2d 842 [56 Cal.Rptr. 485, 423 P.2d 557], here argues that since he was arrested outside the locked door of the apartment, the search of the apartment was beyond the immediate vicinity of the arrest. Neither of the cases cited by respondent is helpful; in *People* v. *Cruz,* the defendant was arrested in an automobile parked on a public street at some distance from his home; in *Henry, supra,* the arrest occurred on a public sidewalk at a distance from the entrance to the hotel where the defendant occupied a second story room. The instant case is substantially similar to *People* v. *Aleria,* 193 Cal.App.2d 352 [14 Cal.Rptr. 162]; *People* v. *Adame,* 250 Cal.App.2d 380 [58 Cal.Rptr. 687]; *People* v. *Rodriguez,* 238 Cal.App.2d 682, 688-690 [48 Cal.Rptr. 117]; and *People* v. *Samuels,* 229 Cal.App.2d 351, 357 [40 Cal.Rptr. 290]. In each of these cases, the defendant was arrested in the common entrance or areaway of a multiple unit dwelling and the subsequent search of the particular portion of the locked

---

[4]We note that in the proceedings before the court below, the legality of the arrest was apparently assumed. The record indicates that the lower court granted respondent's motion as it concluded that the search was unreasonable and unlawful.

premises under the control of the defendant held to be incidental to the arrest.

Similarly here, the fact that respondent was at the moment of arrest outside the four walls of his apartment does not, by itself, preclude the search of the apartment (*People* v. *Marquez,* 259 Cal.App.2d 593, 601 [66 Cal.Rptr. 615]). We conclude that under the circumstances here shown, the search was incidental to the arrest, was limited to the premises where the arrest was made, was contemporaneous therewith and reasonable in scope (*People* v. *Cruz, supra,* p. 866).

Since we conclude that the search was lawful as incidental to respondent's lawful arrest, we need not consider whether or not his acquiescence in the search amounted to a voluntary consent or was tainted by the fact of arrest (*People* v. *Pressley,* 242 Cal.App.2d 555, 560 [51 Cal.Rptr. 563]).

As respondent's final argument concerning the sufficiency of the evidence presented to the grand jury is predicated on the exclusion of the fruits of the assertedly illegal arrest and unlawful search, we need not discuss the contention in detail. The trial court erred in setting aside the indictment if the evidence presented to the grand jury shows some rational ground for assuming the possibility that respondent was guilty as charged (*Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183-184 [281 P.2d 250]). It is not for this court or the trial court to weigh the evidence presented to a grand jury. Under the circumstances of this case, all of the items found in respondent's apartment were competent and admissible. It follows that there was competent evidence for assuming that respondent was guilty of violating Penal Code section 337a, subdivisions 2, 4, and 6, as charged (*People* v. *Cahan,* 126 Cal.App.2d 785, 793 [273 P.2d 64] ; *People* v. *Foster,* 199 Cal.App.2d 866, 870-871 [19 Cal.Rptr. 283]).

The order appealed from is reversed.

Shoemaker, P. J., and Agee, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 15, 1969.