[Crim. No. 5517. First Dist., Div. One. Mar. 26, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARD PERRY, Defendant and Appellant.

Thomas J. Clancy, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Jerome C. Utz, Deputy Attorneys General, for Plaintiff and Respondent.

SIMS, J.—Defendant, individually, and through his trial attorney, filed notices of appeal from a judgment of conviction sentencing him to state prison following a jury trial in which he was found guilty of possession of heroin in violation of section 11500 of the Health and Safety Code, and found to have suffered a prior conviction of a violation of section 11530 of that code.

He makes the following contentions through his court-appointed attorney:[1] (1) The evidence introduced at the pre-

---

[1]The course of defendant's appeal has not been smooth. Having been denied probation and sentenced on October 25, 1965, he filed his notice of appeal in propria persona on November 4, 1965, and the record was filed with this court January 24, 1966. A month later, after delays occasioned by defendant's request for the appointment of his trial counsel, an attorney was appointed to represent defendant on this appeal. Six months later it was ascertained that trial counsel had lost the copies of the record, which had been forwarded to him because he also had filed a notice of appeal on behalf of the defendant. Copies of the record then were furnished to the appointed attorney by the court. Following several extensions of time for the filing of an opening brief, that attorney in November 1966 sought and secured an order for augmentation of the record to include the examination of jurors, statements and arguments of counsel and the court's instructions. These records were prepared and filed in April 1967. In May the attorney sought and secured an order augmenting the record to include the transcript of the preliminary examination. This document was immediately made available. In September 1967, after inquiries by the court and the defendant, the appointed counsel wrote that he found no merit in the appeal, and sought to be relieved. Thereafter, the defendant was requested to advise the court of the points he wished to raise on appeal. Delays ensued in transmitting the transcripts to defendant and in securing further portions of the record requested by him. In December 1967, the court granted the original attorney's request to withdraw and appointed defendant's present attorney. Meanwhile the defendant, presumably in response to the invita-

liminary hearing did not constitute proper cause to bind the defendant over to the superior court; (2) The search warrant in the possession of the arresting officers was invalid; (3) The evidence at the trial was insufficient to sustain the guilty verdicts; (4) Prejudicial evidence was improperly admitted at the trial; (5) Defendant was inadequately represented by counsel; and (6) Defendant was improperly sentenced. These contentions, and those made by the defendant in propria persona, have been examined. No reversible error is found, and the judgment must be affirmed.

The evidence offered by the prosecution if accepted as true, as it must be on this appeal, shows that a semi-concealed package, known to contain heroin, was deliberately retrieved and carried off by the defendant. The defendant not only questions the sufficiency of the evidence to sustain that conclusion, but also asserts that he was prejudiced because evidence of collateral events and conduct was received, and that his trial counsel's acts and omissions demonstrate that he was denied the effective assistance of counsel. The particular facts are set forth below.

## Sufficiency of the Evidence at the Preliminary Examination

The defendant made a timely motion to dismiss the information[2] pursuant to the provisions of section 995 of the Penal Code which was denied. He is, therefore, entitled to a review of the legality of his commitment. (*People* v. *Elliot* (1960) 54 Cal.2d 498, 503 [6 Cal.Rptr. 753, 354 P.2d 225];

tion of the court, prepared and filed on January 15, 1968 a ''Petition for Writ of Supersedeas.'' It is in the form of a complete brief raising nine points of error. Although the writ was denied, and an order was made denying rehearing on that denial, the points raised by defendant in the petition have been considered by the court. In fact, in most respects the brief appears to be founded on the points and authorities found in the petition.

[2]Defendant's objections, raised in his petition (see fn. 1), to the form of the information are groundless. He contends it should have shown how much heroin he allegedly possessed, and the specific time of his alleged possession. The day, on or about November 6, 1964, is alleged. In the latter connection he makes the startling statement, ''He had in his possession a quantity of heroin each and everyday. To him possession of heroin was a necessity. Petitioner may have possessed heroin 20 times per day. Out of these 20 times he possessed heroin in a day, he may be charged with having heroin on one of those occasions.'' He also alleges that the information should have alleged intent or malice. Generally, a concise statement of the offense is sufficient. (See Pen. Code, §§ 950-952, 955, 959 and 960; and cf. *People* v. *Sesslin* (1968) 68 Cal.2d 418, 425-426 [67 Cal.Rptr. 409, 439 P.2d 321.]) Moreover, the failure to demur is a waiver of all but jurisdictional defects. (Pen. Code, § 1012.)

*People* v. *Hellum* (1962) 205 Cal.App.2d 150, 154 [22 Cal.
Rptr. 724].)

■ Both parties agree ''that to establish unlawful posses-
sion of narcotics it must be shown that the accused exercised
dominion and control over the drug with knowledge of its
presence and narcotic character.'' (*People* v. *Redrick* (1961)
55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255]. See also
*People* v. *Showers* (1968) 68 Cal.2d 639, 642-643 [68 Cal.Rptr.
459, 440 P.2d 939] ; *People* v. *Winston* (1956) 46 Cal.2d 151,
158-161 [293 P.2d 40] ; *People* v. *Gorg* (1955) 45 Cal.2d 776,
780 [291 P.2d 469] ; *People* v. *Gory* (1946) 28 Cal.2d 450, 454-
456 [170 P.2d 433] ; *People* v. *Solorio* (1965) 232 Cal.App.2d
527, 530 [42 Cal.Rptr. 914] ; *People* v. *Juvera* (1963) 214
Cal.App.2d 569, 573 [29 Cal.Rptr. 653] ; *People* v. *Estrada*
(1960) 185 Cal.App.2d 435, 437 [8 Cal.Rptr. 308] ; *People* v.
*Stanford* (1959) 176 Cal.App.2d 388, 390 [1 Cal.Rptr. 425] ;
*People* v. *Tabizon* (1958) 166 Cal.App.2d 271, 273 [332 P.2d
697] ; *People* v. *Jackson* (1958) 164 Cal.App.2d 772, 778 [331
P.2d 218] ; and *People* v. *Rodriguez* (1957) 151 Cal.App.2d
598, 601 [312 P.2d 272].) Moreover, it is recognized ''that
proof of opportunity of access to a place where narcotics are
found, without more, will not support a finding of unlawful
possession.'' (*People* v. *Redrick, supra,* 55 Cal.2d 282, 285
and see review of cases pp. 285-288. See also *People* v. *Stan-
ford, supra,* 176 Cal.App.2d 388, 391-392; and *People* v. *Tab-
izon, supra,* 166 Cal.App.2d 271, 273-274.)

■ ''Possession and knowledge may be proved by circum-
stantial evidence and any reasonable inferences drawn there-
from. [Citations.] Neither exclusive possession of the premises
nor physical possession of the narcotic is necessary. [Cita-
tions.]'' (*People* v. *Solorio, supra,* 232 Cal.App.2d 527, 530.
See also *People* v. *Juvera, supra,* 214 Cal.App.2d 569, 573;
*People* v. *Estrada, supra,* 185 Cal.App.2d 435, 437; and *Peo-
ple* v. *Stanford, supra,* 176 Cal.App.2d 388, 390.)

At the preliminary examination the People produced a
search warrant dated October 30, 1964 which authorized
search of the defendant and a woman, and the motel unit
allegedly occupied by them, the affidavit upon which it was
predicated, and the return made on it. Defendant's attorney,
who was replaced in the trial court, indicated that he had no
intention of controverting the search warrant at that time.
Sergeant Hilliard testified that on October 30th, while armed
with the search warrant, he observed the defendant leave the
unit on two occasions, on each of which he disappeared from

the observer's sight toward the rear of the motel for a few minutes; that he observed the defendant's female companion walk from the same unit to the front of the motel and apparently deposit an object in the rain gutter, and that about five minutes later he ascertained by inspection that the object was a hypodermic needle and an eyedropper wrapped in a white "Kleenex." The court's attention was directed to the fact that the complaint alleged an offense in November. Following discussion between court and counsel, the evidence was not stricken, as stated by defendant, but the prosecutor was admonished to proceed with evidence of the offense on November 6th.

The witness further testified that on November 5th, about 11 p.m., he had a conversation with and arrested a young lady whom he had observed leave a position in front of the unit occupied by defendant; that thereafter he found a white "dixie" cup containing a substance packaged in a balloon in the rain gutter of the motel; that he removed a portion of the substance and delivered it to a criminologist (for the purposes of the preliminary hearing it was stipulated that the portion so removed was heroin with a powder weight of 0.90 grams); that he placed his initials on the cup; that he dusted the cup and the balloon with fluorescent powder; that he returned the cup with the balloon and its remaining contents to the rain gutter; and that he arranged for surveillance of the scene. Other officers testified that the cup was kept under surveillance until about noon on November 6th; that at that time the defendant left unit 105 and walked toward the front of the building toward the street and disappeared; that a few minutes later he returned up the back stairs with a brown paper bag in his right arm; that he looked around, reached up with his left hand and pulled the object under surveillance out of the gutter; that his subsequent actions were hidden from the observer by the defendant's body, but within seconds his left arm gave a throwing motion, and an object, which subsequently proved to be a paper cup marked with Hilliard's initial, fell to the pavement below.

The observing officer testified that the defendant then entered unit 105 and remained there for approximately a half hour; that he then came out with a young lady, walked back to the rear stairs and descended to an automobile parked at the back of the apartment house. The officer pursued the couple, showed them a copy of the search warrant and placed them under arrest. He searched the defendant, went back and

searched the room, and brought the defendant to the vice control office where he was exposed to a light which revealed fluorescent powder on the fingers of his left hand, on his shoelaces, on his socks, and on the front of his trousers. The officer testified that nothing was found in the search of defendant, and his apartment, or in the area except the empty paper cup. The return on the search warrant indicates that six balloons—two red, two yellow, one green and one white—two eyedroppers, and a package of cigarette papers were removed from unit 105 on November 6th.

In *People* v. *Showers, supra,* the court observed, ''Ordinarily, it can be inferred that the person who first returned to search and who searched the most times was the one who dropped the narcotics. When such an inference may reasonably be made the conviction must be affirmed even though other inferences may similarly be drawn pointing to innocence. [Citations.]'' (68 Cal.2d at pp. 644-645.) In *Showers* the inference was found to be unreasonable because the searcher was not the only one who might have dropped the contraband, and because his lack of success in his search indicated that he did not know where it had been placed. ▮ In this case, however, the prosecution is not based upon the inference that defendant, who had no difficulty in locating the apparently concealed paper cup, was the possessor at the time it was placed in the rain gutter, but upon the inference that he took the balloon with the remainder of the heroin into his possession at the time he discarded the cup.

Defendant's objection to the sufficiency of the evidence introduced at the preliminary hearing is predicated on the theory that the evidence compels the inference that the defendant's conduct was innocent in nature, unless, as was the case at the trial, it is viewed with evidence of prior activities which occurred at the scene. Since there was in fact evidence of those prior activities at the preliminary examination there is no substantial difference in the evidence. He asserts that his removal, inspection and disposal of the cup are consistent with the conclusion that he found nothing in it; that thereafter, while unaware that he was under surveillance he proceeded with his normal activities; that being unaware of the surveillance he had no motive for disposing of the heroin; that neither he nor his companion was shown to be under the influence of narcotics when arrested; and that a search of the persons of himself and his companion, and of his apartment, failed to produce the heroin. He concludes that,

from all that appears, the defendant never took the balloon and its contents into his possession. On the other hand, the unequivocal testimony of the officers indicates that the balloon and heroin were in the cup; that they were not disturbed until defendant took the cup into his possession; that the cup, when disposed of, appeared to be empty; and that no balloon was found in the area.

Since the evidence permits the inference that defendant did in fact take the balloon containing the heroin, defendant's objection must fail. "The facts here establish that a magistrate could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendants had participated." (*People* v. *Solorio, supra,* 232 Cal. App.2d 527, 530. See also *Rogers* v. *Superior Court* (1955) 46 Cal.2d 3, 7-8 [291 P.2d 929]; *People* v. *Nagle* (1944) 25 Cal. 2d 216, 222 [153 P.2d 344]; *People* v. *Malki* (1960) 181 Cal. App.2d 118, 121-122 [5 Cal.Rptr. 207]; and *People* v. *Platt* (1954) 124 Cal.App.2d 123, 131 [268 P.2d 529].)

Defendant's objections that the proceedings were invalid because of the admission, though no objection was made, of improper evidence, and that they were tainted by improper use of the search warrant, go to the very heart of the case, and are discussed below.

*Sufficiency of the Evidence at the Trial*

At the trial Sergeant Hilliard's testimony commenced with recounting the events which commenced at 11 o'clock on the night of November 5th. He augmented his testimony by revealing that before he removed a sample for the criminologist, he made a reagent test on a small portion of the contents of the balloon which indicated it was an opium derivative.

On cross-examination of Sergeant Hilliard the defendant's attorney brought out that the woman arrested by the sergeant on November 5th had been arrested by him on several occasions for the use of narcotics; that Hilliard's search of the rain gutter was based on his conversation with the woman he arrested November 5th, on the search warrant, and on his observations on October 30th; that Hilliard had observed the defendant and his companion and discovered the paraphernalia on October 30th; and that defendant after his arrest had told Hilliard that he would rather not say anything until he consulted his attorney. On redirect examination the prosecution brought out that the woman arrested on November 5th had first been observed standing in front of unit 105.

· The discovery of the cup and Sergeant Hilliard's subsequent activities were corroborated by the testimony of another officer who also joined in the surveillance until relieved at about 7 :30 a.m. on November 6th.

The officer who testified concerning defendant's arrest repeated the narration he had given at the preliminary examination. He elaborated on his prior testimony by stating that before defendant and his companion left the room, the door was opened and remained open for five minutes; that the defendant then stepped out, looked up and down, and went back in; and that about three minutes later both left the apartment. He testified, without objection, that the items listed on the return were found in the search of the apartment. When he described the balloons as being cut—just a portion of a balloon, the defendant objected on the grounds that the prosecution should produce the balloons. The objection was overruled. According to the witness the items were still held by the property clerk.

A criminologist with a Ph.D. in physical chemistry testified that the powder, which Sergeant Hilliard testified he had removed from the red balloon in the paper cup, contained heroin and weighed 0.90 grams; that he did not determine the actual heroin content because there is usually heroin plus something else in the powder; and that he had never observed a pure sample of heroin.

The prior conviction, upon which the defendant had stood mute, was established by a certified copy of the judgment, and the testimony of the defendant's probation officer in those proceedings, who identified the defendant as the person named in that judgment.

The defendant testified and admitted his prior conviction on July 23, 1964 in the City and County of San Francisco. He acknowledged that he had known two of the officers for about three years; that he had been arrested about five times for investigation of narcotics, practically every time by the officer who made the arrest November 6th; and that he had been released each time without prosecution. He denied knowledge of any cup or object in the rain gutter, and denied that he removed any object from that place. According to him, following his arrest under the search warrant his apartment was searched without revealing any narcotics. After his companion was taken away he was stripped and searched, and while clad only in shorts was handed a paper cup which he noticed had the initial "H" on it. Thereafter he dressed, and a light was

brought to the apartment which revealed fluorescent powder on his clothing. He stated that he was requested to give a statement, but said nothing because he did not ascertain the charges until the following Monday. On Saturday, the day after his arrest, he was requested to take a Nalline test to reveal whether he had been using narcotics, and he refused, because on prior occasions his passing the test had not always lead to his immediate release.

Defendant's objections to the sufficiency of the evidence on the grounds that it compelled inferences favorable to him have already been discussed in connection with the review of the record at the preliminary examination. His objections predicated upon the alleged receipt of improper evidence, and misuse of the search warrant are examined below.

He additionally contends that the testimony of the criminologist was insufficient to show that the substance in the balloon was in fact heroin, or that it was of sufficient quantity to warrant a finding of knowledgeable possession. (See *People* v. *Leal* (1966) 64 Cal.2d 504, 512 [50 Cal.Rptr. 777, 413 P.2d 665] and *People* v. *Aguilar* (1963) 223 Cal.App.2d 119, 123 [35 Cal.Rptr. 516].) The witness testified that the powder contained heroin. In *Leal, supra,* the court stated: ". . . in penalizing a person who possesses a narcotic the Legislature proscribed possession of a substance that has a narcotic potential; it condemned the commodity that could be used as such. It did not refer to *useless* traces or residue of such substance. Hence the possession of a minute crystalline residue of narcotic useless for either sale or consumption . . . does not constitute sufficient evidence in itself to sustain a conviction." (64 Cal.2d at p. 512.) In this case knowledge can reasonably be imputed to each person who was a party to concealing or retrieving the powder, because quantitatively it was a substantial amount—assuming one-half was removed, at least 0.90 grams of powder would have remained. (Cf. *People* v. *Adame* (1967) 250 Cal.App.2d 380 at p. 383 [58 Cal.Rptr. 687], six balloons containing a total of 5.40 grams of heroin.) The fact that it was packaged in a balloon, that it was protected by the cup, and that it was concealed in the rain gutter bespeaks that it qualitatively had sufficient heroin to make it usable for sale or consumption.

A further contention, predicated on the evidence at the trial, rests on testimony which indicates that no fluorescent powder was observed on defendant's right hand. He urges

that it would have been impossible for him to handle the cup and balloon without getting powder on his right hand unless the powder had been transferred, as he testified, when the officer handed him the cup. This matter was extensively argued to the jury and resolved against the defendant.

There was ample evidence to sustain the conviction. In *People* v. *Redrick, supra,* the court stated, "Although the evidence does not appear very convincing, the question of the persuasive effect of such evidence is not for an appellate court. And we cannot say that the circumstances hereinafter related, as a matter of law, at most give rise to a mere suspicion and do not permit a reasonable inference of guilt." (55 Cal.2d at p. 284, and see pp. 289-290. See also *People* v. *Newland* (1940) 15 Cal.2d 678, 680-682 [104 P.2d 778]; *People* v. *Alonzo* (1958) 158 Cal.App.2d 45, 47-48 [322 P.2d 42]; and *People* v. *Rodriguez, supra,* 151 Cal.App.2d 598, 601.) Attention is now directed to the question of whether there was too much evidence.

### Evidence Allegedly Improperly Received

▉ At the trial, Sergeant Hilliard testified, without objection, that on October 30, 1964, he had arranged to have a search warrant issued. The warrant, the affidavit on which it was based, and the return were marked for identification. The arresting officer testified that he served the search warrant on the defendant and arrested him, and made the return after searching the apartment. He used the return to refresh his recollection of the items seized in the room. On cross-examination of the sergeant, defendant's attorney elicited the testimony that the search warrant along with the sergeant's own observations, and the conversation he had with the woman he arrested on November 5th, led him to inspect the rain gutter on that day. At the conclusion of the case for the prosecution, the prosecutor offered all of the exhibits previously marked for identification in evidence. The court asked "Any objection?" and following the reply of defendant's counsel, "No, Your Honor," all of the exhibits were received into evidence. Whatever may be said for the competency, relevancy and materiality of the search warrant and the return, insofar as they throw light on the arrest, on the subsequent search of the defendant's room, and on the nature of the articles found there, cannot justify the admission of the affidavit upon which the search warrant was issued. It expressly sets forth that the police had information that defendant was selling and using

heroin in the room he occupied.[3] It was hearsay, and if used to show the commission of a relevant prior offense, denied the defendant the right to confront and cross-examine the unnamed informer to whom the accusation was attributed. (See *People* v. *McShann* (1958) 50 Cal.2d 802, 806 [330 P.2d 33]; *People* v. *Montano* (1966) 244 Cal.App.2d 555, 561-565 [53 Cal.Rptr. 145]; and cf. *Martin* v. *Superior Court* (1967) 66 Cal.2d 257, 258-259 [57 Cal.Rptr. 351, 424 P.2d 935]; *People* v. *DeLeon* (1968) 260 Cal.App.2d 143, 150-153 [67 Cal. Rptr. 45]; and *People* v. *Sanders* (1967) 250 Cal.App.2d 123, 131-134 [58 Cal.Rptr. 259].) In *People* v. *Gorg, supra,* the court rejected the thesis that the jury should pass on the legality of a search and seizure and weigh the facts giving rise to probable cause. The opinion states: ''The probative value of evidence obtained by a search or seizure, however, does not depend on whether the search or seizure was legal or illegal, and no purpose would be served by having the jury make a second determination of that issue. Moreover, the legality of a search or seizure will frequently depend on whether the officer had reasonable cause to make an arrest, and since such cause is not limited to evidence that would be admissible at the trial of the issue of guilt [citation], evidence that was otherwise inadmissible and prejudicial would frequently be presented to them if the jury were required to pass on the legality of the search or seizure.'' (45 Cal.2d at p. 781.)

Defendant is precluded from attacking the admission of this evidence by the rule that ''ordinarily the admissibility of evidence will not be reviewed on appeal in the absence of a

---

[3]The affidavit reads in part: ''Affiant was notified on the 30 Oct. 64, by reliable confidential informant that the said listed Mary Curry and Edward Perry, who are living at 874 West MacArthur Unit # 105, are selling $10.00 papers and $25.00 balloons of Heroin. Informant further stated that on several occasions· the informant has purchased $10.00 papers of Heroin from both Mary Curry and Edward Perry in Unit # 105 which is located at 874 West MacArthur Blvd. and on at least 2 occasions while present in Unit # 105, has observed both Edward Perry and Mary Curry injecting Heroin into their veins, using narcotic paraphenalia [*sic*]. The last purchase of Heroin from Unit # 105 of 874 West MacArthur Blvd. by the informant was made on 29 Oct. 64 at approximately 2115 hours, from Edward Perry and cost the informant $10.00 for a $10.00 paper. Affiant further states that the informant has previously given information, which has proved to be accurrate [*sic*] and correct and has resulted in the arrest of several persons for narcotic violations. In view of the above related facts and since contraband narcotics which are easily disposed of are involved it is requested that a direction be made authorizing day or night service of the search warrant.'' ·

sufficient objection in the trial court. [Citations.]" (*People* v *Cockrell* (1965) 63 Cal.2d 659, 667 [47 Cal.Rptr. 788, 408 P.2d 116]. See also, *People* v. *Talley* (1967) 65 Cal.2d 830, 837-838 [56 Cal.Rptr. 492, 423 P.2d 564]; *People* v. *Ibarra* (1963) 60 Cal.2d 460, 462-463 [34 Cal.Rptr. 863, 386 P.2d 487]; *People* v. *Davis* (1968) 265 Cal.App.2d 341, 345-346 [71 Cal.Rptr. 242]; *People* v. *Graves* (1968) 263 Cal.App.2d 719, 730-731 [70 Cal.Rptr. 509] [modified in other particulars]; *People* v. *DeLeon, supra,* 260 Cal.App.2d 143, 149-150; *People* v. *Pineda* (1967) 253 Cal.App.2d 443, 465 [62 Cal. Rptr. 144]; *People* v. *Fritz* (1967) 253 Cal.App.2d 7, 14 [61 Cal.Rptr. 247]; *People* v. *Garrison* (1966) 246 Cal.App. 2d 343, 350 [54 Cal.Rptr. 731]; *People* v. *Carter* (1961) 192 Cal.App.2d 648, 661 [13 Cal.Rptr. 541]; and *People* v. *Jackson, supra,* 164 Cal.App.2d 772, 774-775. Cf. *Estate of Fraysher* (1956) 47 Cal.2d 131, 135 [301 P.2d 848].) It is only necessary to discuss the foregoing, and other evidence of questionable nature which was admitted without objection, because of the light it throws on defendant's claim discussed below, that he was not adequately represented by his trial counsel. (See *People* v. *Ibarra, supra,* 60 Cal.2d at pp. 464-466; *People* v. *Pineda, supra,* 253 Cal.App.2d 443, 465-473; and *People* v. *Garrison, supra,* 246 Cal.App.2d at p. 356.)

In *People* v. *Albertson* (1944) 23 Cal.2d 550 [145 P.2d 7], the majority opinion sets forth the rule concerning evidence of prior offenses as follows: "The general rule, universally recognized, is that in a criminal prosecution the defendant can be tried for no other offense than that which he is charged in the indictment or information; evidence of collateral independent crimes is not admissible [citations]. The equally well recognized exceptions to this rule are clearly defined. Evidence of other crimes may be admitted when it tends directly to establish the crime charged by proving a material fact, where it is part of the res gestae, or where it helps to disclose motive, intent, premeditation, guilty knowledge, malice, or a common plan or scheme [citations]. The trial court, however, should be guided by the rule that such proof is to be received with 'extreme caution.' and if its connection with the crime charged is not clearly perceived, the doubt is to be resolved in favor of the accused. instead of suffering the minds of the jurors to be prejudiced by an independent fact, carrying with it no proper evidence of the particular guilt. [Citations.]" (23 Cal.2d at pp. 576-577.) In *Albertson* the court concluded: "Circumstantial proof of a

crime charged cannot be intermingled with circumstantial proof of suspicious prior occurences in such manner that it reacts as a psychological factor with the result that the proof of the crime charged is used to bolster up the theory or foster suspicion in the mind that the defendant must have committed the prior act, and the conclusion that he must have committed the prior act is then used in turn to strengthen the theory and induce the conclusion that he must also have committed the crime charged. This is but a vicious circle. Here the evidence of suspicious prior occurrences affords no substantial proof whatsoever connecting defendant in any way with the charge on which he was tried." (*Id.*, pp. 580-581.)

■ Defendant claims that evidence of the alleged sale on October 29, 1964, as set forth in the hearsay statements in the affidavit for the search warrant, Hilliard's testimony of the activities he observed of defendant and the woman who apparently occupied the room with him on October 30th, his testimony of the activities he observed on November 5, 1964, and the evidence of defendant's prior conviction were all admitted in violation of the foregoing rules. Here again he is faced with the failure to interpose an objection in the trial court. (See *People* v. *Cockrell, supra,* 63 Cal.2d 659, 677, and other cases cited above.) Moreover, it appears that the activities observed on October 30, 1964, and the nature of the activities and reason for arrest of the woman who was arrested on November 5th, just prior to the time Hilliard found the contraband in the rain gutter, were elicited by defendant's cross-examination. Nevertheless, the objection must be considered as it bears on the competency of trial counsel.

■ Where the defendant has admitted knowledge of the substance it is error to receive, over objection, evidence of a prior conviction or other offenses for the purpose of establishing such knowledge. (*People* v. *Gregg* (1968) 266 Cal. App.2d 389, 390-396 [71 Cal.Rptr. 920]; *People* v. *Gonzales* (1968) 262 Cal.App.2d 286, 288-291 [68 Cal.Rptr. 578]; *People* v. *Spencer* (1956) 140 Cal.App.2d 97, 102-105 [294 P.2d 997]; and *People* v. *Cabrellis* (1967) 251 Cal.App. 2d 681, 685-688 [59 Cal.Rptr. 795].) On the other hand, in *People* v. *Leyva* (1960) 187 Cal.App.2d 249 [9 Cal.Rptr. 469], the court observed, "An essential ingredient of the offense with which the defendant was charged was his knowledge of the marijuana character of the article allegedly possessed by him. [Citation.] His plea of not guilty created an issue with

respect to this matter. Evidence of the defendant's involvement in other similar crimes and other acts of a similar nature was admissible on the issue thus raised [citations], and was proof that he had knowledge that the substance in the containers found in the back yard at 269 South Allen Street was marijuana.'' (187 Cal.App.2d at p. 254. See also *People* v. *Soto* (1966) 245 Cal.App.2d 401, 405-407 [53 Cal.Rptr. 832]; *People* v. *Sykes* (1965) 238 Cal.App.2d 156, 162 [47 Cal.Rptr. 596]; *People* v. *Solis* (1961) 193 Cal.App.2d 68, 75-77 [13 Cal.Rptr. 813]; *People* v. *Horn* (1960) 187 Cal.App.2d 68, 75-76 [9 Cal.Rptr. 578]; *People* v. *Gonzales* (1960) 186 Cal.App. 2d 79, 83 [8 Cal.Rptr. 704]; and *People* v. *Rodriquez, supra,* 151 Cal.App.2d 598, 601.)

 Evidence of defendant's prior conviction of an offense involving marijuana may have been of questionable relevancy on the issue of his knowledge of the narcotic nature of the powder he allegedly took into his possession in this case. The evidence was properly received, however, on the express issue raised when defendant refused to answer whether he had or had not suffered a prior conviction. (See Pen. Code, § 1025.) Moreover, when the defendant testified, he subjected himself to impeachment by reference to this conviction. (Code Civ. Proc., former § 2051. See Evid. Code, § 788.)

The sale of heroin on October 29th, if established by competent evidence, would have been relevant and material on the issue of his knowledge of the nature of heroin when he took the package into his possession on November 6th.

The use of the rain gutter on October 30th for the purpose of concealing paraphernalia used for the administration of narcotics was only relevant insofar as it could be related to defendant. The fact that it was placed there by another occupant of a common room would not, of itself, be of any significance in establishing defendant's guilt. It did, however, bear on defendant's guilt when he himself was observed to pick a concealed object out of the same gutter.

The activities and arrest of the other woman on November 5th, and the reasons for that arrest, in the absence of any direct evidence to show that defendant was in some way connected with her use of narcotics, appears to fall within the type of suspicious activities condemned in *Albertsor*. The significance of this evidence is discussed below in connection with the competency of counsel.

 Defendant further contends that it was not only error to admit the search warrant in evidence, but that the

fruits of the warrant should have been suppressed. The heroin which the sergeant found in the rain gutter was not a product of the search warrant. (Defendant's contention that "but for" the delay in executing the search warrant, the heroin never would have been found is discussed below.) The heroin which he is charged with possessing, being the residue left in the balloon in the cup in the rain gutter, never was found. His objection can only run, not to the physical objects, but to the testimony relating to the empty balloons and other items found in the motel room. No objection was interposed to the admission of this evidence except on the ground that the prosecution should produce the items themselves. Although material objects may be presented to the senses to prove the existence of a fact (Code Civ. Proc., former §§ 1823, 1827 and 1954; see Evid. Code, § 140), it is not necessary that every physical object referred to in the testimony be produced. (*People* v. *Henderson* (1949) 34 Cal.2d 340, 343 [209 P.2d 785]; *People* v. *Lurie* (1967) 257 Cal.App.2d 98, 105 [64 Cal. Rptr. 637]; *People* v. *Potter* (1966) 240 Cal.App.2d 621 [49 Cal.Rptr. 892]; *People* v. *Anderson* (1948) 87 Cal.App.2d 857, 861 [197 P.2d 839].) If defendant questioned the witness' veracity he could have inspected the objects and demanded or subpoenaed their production from the property clerk with whom the witness testified they were lodged. There being no objection on the ground of illegal search and seizure, defendant is barred from making that objection on appeal by the principles first set forth. Again the questioned competency of counsel necessitates further inquiry.

If it be assumed that the search warrant was, a week after its issuance, no longer effective as the basis for a legal search of the premises described (see *Cave* v. *Superior Court* (1968) 267 Cal.App.2d 517, 519-524 [73 Cal.Rptr. 167] [hearing in S.Ct. denied Jan. 22, 1969], and discussion *infra*), the question remains whether the officers were justified in conducting the search as an incident to the arrest of the defendant for an offense which they had observed him commit. The fact that at the time of the arrest, the arresting officers, and at the time of trial, the prosecutor, the attorney for the defendant and the judge all acted under the misapprehension, if it be such, that the search warrant was valid for 10 days, should not give the defendant an immunity from a search which he would not have enjoyed, if there had been no warrant. No protection from a violation of constitutional principles, or necessity for chastising officers for acts performed in

good faith, albeit against future announced policy, requires such an absurd result.

The People now assert: ''Applicable constitutional provisions prohibit only unreasonable searches and seizures. [Citations.] In each instance where the legality of a search and seizure is under inquiry, the primary question is whether it is reasonable. [Citation.] As in the instant case, the issue is raised most frequently where the search was conducted without a warrant. A search which is made as an incident to a lawful arrest, based on reasonable cause to believe that the person arrested has committed a felony, is a lawful search even though made without a warrant [citations] . . .'' (*People* v. *Hammond* (1960) 54 Cal.2d 846, 853 [9 Cal.Rptr. 233, 357 P.2d 289]. See also *People* v. *Daily* (1958) 157 Cal.App. 2d 649, 653 [321 P.2d 469].) They are confronted with the rule enunciated in *People* v. *Cruz* (1964) 61 Cal.2d 861 [40 Cal.Rptr. 841, 395 P.2d 889], ''that a search is not 'incidental to an arrest' unless it is limited to the premises where the arrest is made; is contemporaneous therewith; has a definite object; and is reasonable in scope.'' (61 Cal.2d at p. 866. See also *People* v. *Marshall* (1968) 69 Cal.2d 51, 60 [69 Cal. Rptr. 585, 442 P.2d 665] [as modified]; and *People* v. *Henry* (1967) 65 Cal.2d 842, 845-846 [56 Cal.Rptr. 485, 423 P.2d 557].) Their reliance on *People* v. *Daily, supra,* is misplaced. That case, in authorizing a search some distance from the place of arrest, is predicated upon the mobility of motor vehicles. (See *People* v. *Fritz, supra,* 253 Cal.App.2d 7, 14-16.) If the activities observed had all transpired without the defendant entering his room, the arrest at the parked automobile would not have warranted a return to search that room.

In both *Cruz* and *Henry, supra,* the defendant was first observed and arrested on the street, and then taken to the premises. In this case the defendant was observed to go into his room under circumstances which indicated, and which were by the jury found to indicate, that he had removed and taken into his possession, and apparently into his room, the heroin which previously had been in the rain gutter. The arrest followed as soon as practical after he emerged from his room. Under these circumstances it was proper to return and search the room. In *People* v. *Pompei* (1968) 267 Cal.App.2d 581 [73 Cal.Rptr. 163], *Cruz* and *Henry* were distinguished, and after reviewing other cases, the court concluded, ''In each of these cases, the defendant was arrested in the common entrance or areaway of a multiple unit dwelling and the

subsequent search of the particular portion of the locked premises under the control of the defendant held to be incidental to the arrest. Similarly here, the fact that respondent was at the moment of arrest outside the four walls of his apartment does not, by itself, preclude the search of the apartment (*People* v. *Marquez,* 259 Cal.App.2d 593, 601 [66 Cal.Rptr. 615]). We conclude that under the circumstances here shown, the search was incidental to the arrest, was limited to the premises where the arrest was made, was contemporaneous therewith and reasonable in scope (*People* v. *Cruz, supra,* p. 866).'' (267 Cal.App.2d at pp. 586-587. See also *People* v. *Cockrell, supra,* 63 Cal.2d 659, 667; and *People* v. *Adame, supra,* 250 Cal.App.2d 380, 384-385.)

 The prosecution offered no evidence of any statements made by the defendant, or of any reaction by him to any accusation. Cross-examination of Sergeant Hilliard revealed that he talked to the defendant after his arrest; that he could not remember what remarks he addressed to the defendant; and that the defendant said he would rather not say anything until he consulted his attorney. Cross-examination of the arresting officer elicited that the defendant said nothing when he was placed under arrest and was advised of his legal rights; that at the room the officer asked him if he was ''holding'', i.e., whether he had any narcotics, and defendant answered in the negative; that on the way downtown he had a general conversation with the defendant, which he did not think referred to the case; that in the interview room he did not request a statement, but asked the defendant if he had seen the articles from the apartment or the cup before, and received a negative response; that the defendant acknowledged he had not observed the arresting officer in the room where he had been secreted to conduct the surveillance; and that defendant said nothing when asked if he flushed away the narcotics.

On direct examination the defendant testified that he was not asked any questions while the officers were searching his room; that the conversation with the officer on the way downtown related to the fluorescent light (which the defendant testified had been used at his room); that at the police department the arresting officer asked him if he wanted to make a statement; that he was not told and did not know for what charge he was under arrest or under investigation, and told the officer he did not know what happened; that he did not

give that officer or any other officer a statement; and that the arresting officer addressed no other remarks to him.

It was only after the foregoing evidence had been elicited that the prosecution interrogated defendant concerning his statements. Under cross-examination the defendant denied that the arresting officer ever asked him if he was "holding." He reiterated this denial on redirect. The prosecutor also brought out again that the defendant, in response to the arresting officer's inquiry, told him that he had no statement to make.

Defendant seeks the shelter of the principle that since an adverse inference may not be drawn from an accused's silence, evidence of an accusatory statement and the accused's silence, or lack of explanation, is not admissible. (*People v. Ridley* (1965) 63 Cal.2d 671, 676 [47 Cal.Rptr. 796, 408 P.2d 124]; *People v. Cockrell, supra,* 63 Cal.2d 659, 669-670; *People v. Maldonado* (1966) 240 Cal.App.2d 812, 816-817 [50 Cal.Rptr. 45].; and see *People v. Haston* (1968) 69 Cal.2d 233, 254-257 [70 Cal.Rptr. 419, 444 P.2d 91].) Here again he is barred by the fact that the evidence of which he now complains was elicited on his behalf, and was received without objection, insofar as it was confirmed by the prosecutor's questioning.

Finally, defendant attacks the evidence which shows that on the day following his arrest he refused a Nalline test. This evidence was relevant to show defendant's knowledge of the nature of narcotics. The test might have thrown some light on the use of the powder in the balloon, although the officers who observed the defendant did not consider him under the influence of narcotics after his arrest. (See *People v. Davis* (1964) 231 Cal.App.2d 180, 185 [41 Cal.Rptr. 617].) In *People v. Zavala* (1966) 239 Cal.App.2d 732 [49 Cal.Rptr. 129], this court recognized that the California courts are committed to the view that the privilege against self-incrimination is limited to testimonial compulsion, and that the privilege does not encompass the use of evidence which is obtained by means of subjecting the defendant to tests or a physical examination. (239 Cal.App.2d at pp. 738-739. See also *People v. Sudduth* (1966) 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401]; and *People v. Ellis* (1966) 65 Cal.2d 529, 533 [55 Cal.Rptr. 385, 421 P.2d 393].)

Since there is no constitutional right to refuse a test or examination, the refusal to cooperate may generally be used as conduct indicating consciousness of guilt, and to

supply an inference that an inculpatory condition would have been revealed by the test. (*People* v. *Sudduth, supra,* 65 Cal. 2d at pp. 546-547; *People* v. *Ellis, supra,* 65 Cal.2d at pp. 536-538; and *People* v. *Zavala, supra,* 239 Cal.App.2d at pp. 740-741.) Nevertheless, in *Zavala* it was held that comment on the failure to take a Nalline test would defeat the legislative intent expressed in sections 11723 and 11728 of the Health and Safety Code, that consent to the taking of the test could be withheld. (239 Cal.App.2d at pp. 739, 741-742.) ▮▮▮ No objection was interposed in this case, as was done in *Zavala.* In fact the issue was first brought out by the defendant himself who volunteered, when being interrogated about statements addressed to him by the police officers, that on the day following his arrest ''they came to get me to take me to Nalline.'' He further testified that he did not take the test. When the prosecution secured a reiteration of this refusal on cross-examination, the defendant explained that on prior occasions when he had been arrested for investigation, he had been told he would be discharged if he passed the test, but despite doing so was still held for a full 72 hours.

No cognizable errors are found in the admission of evidence because of the failure to interpose reasonable objections on the defendant's behalf. The effect of any omissions on the part of defendant's counsel must be considered with the other objections to his competency.

### Delay in Serving the Search Warrant

▮▮▮ At the preliminary hearing it was assumed by all concerned that the search warrant was valid, and that under the provisions of section 1534 of the Penal Code[4] it could be executed at any time within 10 days after its date. The same assumption appears to have pervaded the trial. Defendant's counsel argued cogently but unsuccessfully that the delay in executing the search warrant, the fact that it would become void in a few days, and, the failure to arrest the defendant at the time he allegedly picked the cup out of the rain gutter, demonstrated that the officers acted when they did on trumped-up charges.

The defendant himself, in his petition (see fn. 1), presaged the principles later enunciated in *Cave* v. *Superior Court,*

---

[4]Penal Code section 1534 provides: ''A search warrant must be executed and returned to the magistrate who issued it within ten days after its date; after the expiration of this time the warrant, unless executed, is void.''

*supra,* 267 Cal.App.2d 517. While conceding the validity of the search warrant, he urges that the sergeant should have served the search warrant on October 30th when he observed the defendant and his female companion, named in the warrant, at the premises. Again on November 5th the same officer was at the premises. The defendant urges that on this occasion there was not only a failure to execute the warrant, but also that the officer violated its terms by not returning the objects found in the rain gutter to the court.[5] In making these contentions he relies, as does *Cave* (see 267 Cal.App.2d at pp. 519-520), upon the words commanding an *"immediate search"* and ordering that the articles seized be brought *"forthwith"* before the magistrate, as these words are found in the warrant, which follows the form prescribed by section 1529 of the Penal Code. Defendant also points to the prayer in the affidavit which requests a warrant "commanding that an immediate search be made of the person of the said Edward Perry, May Curry, and the premises and building described herein for the articles and property above described. . . ."

In *Cave* the 10-day period provided in section 1534 was construed as a maximum to be resorted to where physical difficulties, or, where search of the person is directed, inability to discover the person to be searched may delay execution. (*Id.,* at p. 520.) The penalty for the officer's failure to perform the ministerial duty in the manner directed by the statutes, as interpreted in *Cave,* is to declare the search illegal and suppress the evidence seized under color of the search warrant. In that case the court issued a writ of prohibition because the trial court had erroneously denied a motion to suppress the evidence which was made on the grounds the seizure was illegal.

It is unnecessary to weigh the merits of *Cave.*[6] There, as

---

[5] It is also suggested that the return of the balance of the heroin in the balloon and cup to the rain gutter was a species of entrapment. This argument fails because the defendant, not the officers, supplied the motivation and actually removed the contraband from its place of concealment. (See *People* v. *Benford* (1959) 53 Cal.2d 1, 8-11 and 14-15 [345 P.2d 928].)

[6] Although the Supreme Court has placed its imprimatur of "hearing denied" upon *Cave* v. *Superior Court* (70 A.C. No. 5, Minutes, p. 4), it has not thereby foreclosed all discussion of each principle promulgated in that case. (See *Di Genova* v. *State Board of Education* (1962) 57 Cal.2d 167, 178 [18 Cal.Rptr. 369, 367 P.2d 865]; and 3 Witkin, Cal. Procedure (1954) Appeal, § 222, pp. 2437-2438, and 1967 Supp., pp. 1024-1025.) *Cave* notes (267 Cal.App.2d at p. 523) that it has been suggested, ". . . that a warrant is executed 'forthwith' if it is executed

here, the evidence attacked related to new and different offenses from those set forth in the affidavit. In *Cave,* however, the evidence was obtained as the result of the execution of the warrant. In this case the evidence, with the exception of such corroborating evidence as was seized after the arrest, was secured as the result of the observations of the officers, and was located outside, not within, the premises which were authorized to be searched by the warrant. In *Cave* the court concluded that "a peace officer may [not] delay the execution of a search warrant in which immediate search is directed for a period of seven days, for the purpose of apprehending additional evidence, including evidence of crimes not yet committed when the warrant was issued, *within the described premises.*" (267 Cal.App.2d at p. 519, italics added.) Although the opinion suggests that prompt execution will be of benefit to the victims of crime (in this case presumably other purchasers or users) and that it will prevent further criminality (here further possession, use or sale), it does not go so far as to state that the penalty for failure to execute the

---

within a reasonable time after its issuance not exceeding ten days. What is a 'reasonable time' must be determined by individual circumstances of each case.'' (*Spinelli* v. *United States* (8th Cir. 1967) 382 F.2d 871, 885-886 [cert. granted (1968) 390 U.S. 942 [19 L.Ed.2d 1130, 88 S.Ct. 1025] and 391 U.S. 933 [20 L.Ed.2d 853, 88 S.Ct. 1834], and reversed for insufficiency of the affidavit upon which the search warrant was issued (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584].] See also *State* v. *Melanakis* (1946) 129 W.Va. 317, 322-323 [40 S.E.2d 314, 318]; and *State* v. *John* (1927) 103 W.Va. 148, 152-153 [136 S.E. 842, 844] overruled on other grounds *State* v. *Bragg* (1955) 140 W.Va. 585, 610 [87 S.E.2d 689, 704]; cf. *State* v. *Pachesa* (1926) 102 W.Va. 607, 611-612 [135 S.E. 908, 910]; and see *State* v. *Moran* (1927) 103 W.Va. 753, 755-759 [138 S.E. 366, 367-368]; *Mitchell* v. *United States* (D.C. Cir. 1958) 258 F.2d 435 at p. 436 [103 App. D.C. 341], and concurring opinion of Bazelan, J., at pp. 436-440, with cases collected at p. 439; and Annotation, Search and Seizure—Intoxicating Liquor (1931) 74 A.L.R. 1418, at pp. 1514-1516.) In *Cave* not a single item of the property described in the affidavit is listed in the return. The question of the efficacy of a seizure based upon an execution delayed for a reasonable cause which, however, yielded the articles described in the affidavit is not resolved by *Cave*. *Berger* v. *New York* (1967) 388 U.S. 41 [18 L.Ed.2d 1040, 87 S.Ct. 1873] suggests that prompt execution may be a constitutional requirement (see 388 U.S. at pp. 57-60 [18 L.Ed.2d at pp. 1051-1053]), but the question of what is a reasonable time for prompt execution is not determined. The problem of seizing fungible contraband which may be the subject of continuing activity conducted on the suspect premises becomes complicated if it is necessary to establish that the particular contraband, or the paraphernalia utilized in its use or sale which is seized, is that which was on the premises at the time grounds for reasonable cause for the issuance of a warrant arose. Is it unreasonable to withhold execution of a search warrant for readily concealed contraband until such time as activity about the premises indicates that it has been withdrawn from a place of concealment for use or sale?

warrant promptly will give the accused carte blanche to commit such offenses as he desires in the interim. It may be assumed that if, as in this case, independent evidence is available to prove the crime in question, the accused could not claim immunity on the grounds that "but for" the delay in the service of the search warrant he would not have committed the new offense. To extend *Cave* to this extreme would render the search warrant a pair of handcuffs stifling the investigator's legitimate activities, and would discourage the use of search warrants.

In *People* v. *Gorg, supra,* in another context, the following appears: "In this proceeding we are not concerned with enforcing defendant's rights under the law of trespass and landlord and tenant, but with discouraging unreasonable activity on the part of law enforcement officers. 'A criminal prosecution is more than a game in which the Government may be checkmated and the game lost merely because its officers have not played according to rule.' (Mr. Justice Stone in *McGuire* v. *United States,* 273 U.S. 95, 99 [71 L.Ed. 556, 558, 47 S.Ct. 259]) . . ." (45 Cal.2d at p. 783.) To paraphrase the rest of the statement it may be said here that when the officers have acted in good faith in gathering evidence of a new offense, the evidence so obtained cannot be excluded merely because the officers may have made a reasonable mistake as to the time within which a search warrant for an earlier offense could be served.

*Cave* was decided after this case was briefed. At oral argument counsel were invited to submit additional memoranda upon the applicability of *Cave.* In addition to the question of whether the evidence of the charged crime was extrinsic to or dependent on the search warrant, and the question of the validity of the search attendant to the arrest, which have both been reviewed above, the parties discussed the question of the failure to make an objection on the grounds announced in *Cave,* and the question of whether *Cave,* if applicable, should be applied prospectively or retroactively. It is unnecessary to determine these issues in view of the conclusion that the evidence adduced here was secured without the blight that marked the evidence which was suppressed in *Cave.*

### Adequacy of Counsel

So far as appears from the record the defendant had counsel of his own selection at the preliminary examination. After the information was filed, the court granted that

attorney's motion to withdraw, and new counsel, also apparently selected by defendant, was substituted.

As in *People* v. *Ibarra, supra,* 60 Cal.2d 460, "Defendant contends that the failure of his counsel to object demonstrates a lack of knowledge of the law that establishes a denial of his constitutional right to 'effective aid in the preparation and trial of the case.' (*Powell* v. *State of Alabama,* 287 U.S. 45, 71 [77 L.Ed. 158, 171-172, 53 S.Ct. 55, 84 A.L.R. 527, 541])" (60 Cal.2d at p. 464.) There the court noted, "To justify relief on this ground, 'an extreme case must be disclosed.' [Citations.] It must appear that counsel's lack of diligence or competence reduced the trial to a 'farce or a sham.' (*People* v. *Wein,* 50 Cal.2d 383, 410 [326 P.2d 457]; *People* v. *Robillard,* 55 Cal.2d 88, 96-98 [10 Cal.Rptr. 167, 358 P.2d 295]; *People* v. *Hughes,* 57 Cal.2d 89, 99 [17 Cal.Rptr. 617, 367 P.2d 33].) It is counsel's duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his failure to do so results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled. [Citations.]" (*Id.* See also *People* v. *Reeves* (1966) 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35]; *In re Beaty* (1966) 64 Cal.2d 760, 764 [51 Cal.Rptr. 521, 414 P.2d 817]; *People* v. *Brooks* (1966) 64 Cal.2d 130, 139 [48 Cal.Rptr. 879, 410 P.2d 383]; *People* v. *Hughes* (1961) 57 Cal.2d 89, 99 [17 Cal.Rptr. 617, 367 P.2d 33]; *People* v. *Ferguson* (1967) 255 Cal.App.2d 493, 496 [63 Cal.Rptr. 93]; and *People* v. *Pineda, supra,* 253 Cal.App.2d 443, 467.)

Defendant's bill of particulars of the shortcomings of his counsel not only includes the failure to interpose an objection to any of the evidence which has been reviewed above, and the failure to legally attack the delay in the service of the search warrant, but also specifies the following: the failure to have defendant admit his prior conviction out of the presence of the jury; the failure to question the proceedings under which the search warrant was issued by a motion to suppress evidence; the failure to adequately cross-examine the arresting officer to bring out his bias, and to demonstrate that the articles seized were not related to the contraband that defendant was accused of possessing; the failure to adequately cross-examine the criminologist; the inadequacy of the attorney's opening statement; his allegedly pointless and damaging examination of the defendant; and his alleged failure to adequately argue the defendant's defense to the jury.

In examining these contentions it is important to

112

trial of a case is of necessity with counsel and the problems of trial tactics and strategy are his responsibility.'' (*People* v. *Ferguson, supra,* 255 Cal.App.2d at p. 496.) ''In the heat of a trial, defendant's counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings. Except in rare cases an appellate court should not attempt to second-guess trial counsel. [Citations.]'' (*People* v. *Brooks, supra,* 64 Cal.2d at p. 140.)

The evidence adduced at the preliminary examination revealed that the defendant was confronted with undesirable alternatives. He could, on the one hand, admit the prior conviction out of the presence of the jury, rest on the presumption of innocence, and attempt to throw doubt on the sequence of events related by the witnesses for the prosecution. Or he could testify himself, and thereby subject himself to impeachment by the record of his prior conviction. The record reflects the trial strategy used was to have the defendant testify, candidly admit the prior conviction and continual harassment by the police, and deny that any heroin was ever removed from the rain gutter. As part of this strategy it was necessary to show that the police were determined to apprehend the defendant at any cost, and also to stress the fact that a most thorough search of the defendant and his room failed to turn up the heroin which he allegedly had taken into his possession one-half hour before the search.[7]

[7]Counsel in his opening statement predicated the defense on the fact that there were no narcotics of any sort found in the possession of the defendant nor in the room which he occupied. He further stated that the defense would show that the light test for fluorescent powder was made at the defendant's room. In his argument to the jury the attorney pointed out that the prosecution had to establish possession, dominion and control by the defendant, and knowledge of the narcotic nature of the substance. He attempted to establish defendant's credibility by reference to the fact he had admitted and plead guilty to a prior violation, and by reference to the fact that in Alameda County he had been subjected to continual harassment without any charges being filed. He made the arguments concerning the sufficiency of the evidence which have been discussed in this opinion, with particular reference to the delay in execution of the search warrant, to the failure to arrest defendant when he was first observed to remove the cup, to discrepancies in the testimony concerning the color of the cup, and to the defendant's version of how he was subjected to touching the cup bearing the fluorescent powder after his arrest. He stressed the fact that a thorough search was made of the apartment, with fluorescent light, and no heroin was ever found. In concluding he stated: ''There was never any red balloon. There was never any narcotic in H-3 [the location of the cup in the rain gutter as marked on a diagram]. The fact that the search warrant was going to run out in two days was one of the motivating reasons why these officers went in and arrested my client. They don't want you to believe that they took that light in and searched room 105 and still found nothing.''

"The fact that the strategy was unsuccessful on this occasion, of course, is no ground for concluding that counsel who conceived it was incompetent. [Citations.]" (*People* v. *Reeves, supra,* 64 Cal.2d at p. 773.)

With this background defendant's present complaints may be examined. No reason has been suggested why the defendant failed to admit his prior conviction out of the presence of the jury, and thereby put the prosecution to proof of that issue.[8] There is nothing in the record to indicate whether the election to stand mute was made by the defendant with, or in spite of, the advice of counsel. Since it developed that the defendant had been granted probation to the court without supervision there may have been some question as to just what the record would show about his prior conviction. In any event, it is difficult to see how defendant was prejudiced by the procedure followed in this case. In testifying he subjected himself to proof of the prior conviction. He candidly admitted it on direct examination. Singularly, the prosecutor never referred to the prior conviction in his argument. Defendant's counsel argued that it demonstrated that his client was ready to admit any malefaction which in truth existed. The court instructed the jury that they could consider the prior conviction for the purpose of impeachment;[9] and that they should not consider the evidence of the prior offense in connection with the principal offense of which he was charged, but only in connection with determining the existence of the alleged prior conviction which had been denied.[10]

---

[8]The record shows that when the defendant was originally arraigned the information charged him with violation of section 11531 of the Health and Safety Code, sale, rather than section 11530, possession, of marijuana. He advisedly refused to admit that charge. On the morning of the trial the information was amended to show the correct charge. Defendant was rearraigned out of the presence of the jury and still refused to answer whether he had or had not suffered the previous conviction. (See Pen. Code, § 1025.)

[9]These instructions read: "A witness is presumed to speak the truth. This presumption, however, may be overcome . . . by proof that he has been convicted of a felony.

"A witness may be impeached . . . by evidence that he has been convicted of a felony. . . ."

[10]These instructions read: "The defendant is on trial only for the offense charged in the Information and the prior conviction charged therein, and you may not convict defendant solely or only because you may believe, if you do believe, that defendant is guilty of some other crime or public offense not charged in the Information under consideration."

"Now, with regard to the prior conviction, I give you the following:

"The defendant has been charged in the Information not only with the offense of violating Section 11500 of the Health and Safety Code,

No grounds have been suggested on which either the attorney employed at the preliminary hearing, or the trial attorney should have attacked the issuance of the search warrant. The discussion of the evidence set forth above indicates that an objection based on the more recently developed theory that the delay in executing the warrant invalidates a search and seizure under color of the warrant, would have been ineffective to prevent the admission of the reference to the articles found in defendant's room. (See *People* v. *Pineda, supra,* 253 Cal.App.2d at pp. 465-473, and cases collected, for a general discussion of the juxtaposition of a claim that there has been an illegal search and seizure, and a claim that there has been ineffective representation by counsel who failed to make timely objection.) Moreover, in this case the apparent strategy was to use the delay in executing the warrant as evidence that the officers were attempting to fabricate a case against defendant. Finally, it should be noted that defendant also wanted to show that he and his room had been thoroughly searched without discovery of the heroin. In establishing this fact he had to take the risk that the jury would find the articles discovered were incriminating. On this issue again one is surprised to find that the prosecutor made no mention of the articles actually found in the room. By the same token it may be inferred that trial counsel was well advised not to cross-examine the arresting officer further in relation to those articles, and in not arranging to have them produced.

 The governing considerations concerning a failure to object to evidence are set forth in *People* v. *Garrison, supra,* as follows: ''The failure of counsel to object at the trial does not ordinarily indicate either incompetence of counsel or unfairness to the client. The system of objections is a useful tool in the hands of a trained professional for the exclusion of matter which should not be received into evidence. But the indiscriminate use of objections, solely because they are available, aids neither the client nor the cause of justice. The

but with a prior conviction of felony. He has denied the alleged prior conviction.

''If you should find the defendant guilty of the offense for which he is on trial in this action, you must also find whether or not the allegation of prior conviction is true.

''For the purpose of these findings a separate form of verdict will be supplied to you.

''In considering whether the defendant is innocent or guilty of the offense for which he is on trial in this action, that being a question that you first must independently decide before taking up the question of the prior conviction, you must not suffer yourselves to be influenced by the accusation or the evidence with respect to this alleged prior conviction.''

choice of when to object and when to allow the evidence to come in as offered is inherently a matter of trial tactics. ▮ Ordinarily the tactical decisions of trial counsel will not be reviewed with the hindsight of an appellate court. (See, e.g., *People* v. *Brooks* [*supra*] . . .; *People* v. *Reeves* [*supra*] . . .) The decisions which counsel must make in the courtroom will necessarily depend in part upon what he then knows about the case, including what his own client has told him. There may be considerations not shown by the record, which could never be communicated to the reviewing court as a basis for its decision. Thus, the appellate court's inability to understand why counsel did as he did cannot be a basis for inferring that he was wrong.'' (246 Cal.App.2d 343, 350-351.)

▮ The futility of objection in the case of most of the evidence alleged to have been erroneously received has been demonstrated above. Further comment may be reserved to a discussion of the charge that the attorney unwarrantedly elicited damaging testimony from his client. However, the failure to take any steps to exclude the affidavit, which had been filed in support of the search warrant, from the evidence received on the principal charge, stands out as a palpable omission, which permitted extremely prejudicial evidence, albeit hearsay, of the defendant's alleged sales of heroin, to be interjected into the case. Nevertheless, the record fails to demonstrate that defendant in fact suffered that prejudice. From all that appears the documents (affidavit, warrant and return, which were stapled together as one exhibit) were only referred to in order to establish that a search warrant was issued, and to refresh the arresting officer's recollection of the articles seized on the search of the room. The affidavit was never read to the jury. The prosecutor's argument was confined to the question of the relative credibility of the officers and the defendant with respect to the events of November 5th and 6th, and he refrained from making any mention of the events set forth in the affidavit, or the observations made by Sergeant Hilliard on October 30th.[11] Apparently the jury

---

[11]The prosecution in its opening statement proposed to prove the discovery of the heroin in the rain gutter on November 5th, the removal of some which tested as heroin, the replacement of the cup with balloon and remaining contents, the removal by defendant, his arrest, and the subsequent search of his room under the search warrant. No mention was made of the antecedent events or defendant's prior conviction.

In opening argument the prosecutor did allude to the fact that a search warrant, which was in evidence, had been issued. He began his narration with the conversation with the woman on November 5th and

retired without taking the exhibits with them. It was stipulated by counsel that such exhibits as the jury might request, with certain exceptions not relevant here, could be sent to the jury room without further order. The record fails to show such a request, and reflects no communication from the jury from the time it retired until it returned to the courtroom with a verdict. On this record it is impossible to conclude that the jurors ever heard about the allegations made concerning the defendant's illegal acts prior to October 30th.

The criticism of counsel's statement and argument to the jury, and his failure to further cross-examine certain witnesses is unwarranted. (See *People* v. *Hughes, supra,* 57 Cal. 2d at pp. 99-100; and *People* v. *Ferguson, supra,* 255 Cal.App. 2d at p. 495.) Defendant's attorney did not spin the skein of events in which the accused was entangled, he had to do the best he could with the evidence which existed. There is certainly no assurance that further cross-examination of the arresting officer would show bias. Counsel could well deem it better to have the uncontradicted testimony of the defendant on that score. Further cross-examination of the criminologist might have made his testimony more, not less, certain.

There remains for consideration the alleged ''purposelessness'' of the direct examination of the defendant. It is indeed strange to find that he did not deny knowledge, or the taking of, any object from the rain gutter on direct examination. This denial was elicited on cross-examination. On direct examination, the defendant admitted that he had suffered the prior conviction; that he had known the arresting officer a long time; that he had been the subject of prior investigations and arrests, that he was conversant with the terminology used by those engaged in the narcotic traffic; that he had not given

---

the subsequent discovery of the heroin. After relating the other facts concerning the sampling, replacement and removal of the cup and its contents, he urged the jury to find that the defendant had taken the balloon from the cup and disposed of its contents; that his demonstrated knowledge of the location of the cup gave rise to the conclusion that he knew the nature of the substance which it contained. The remainder of the argument is devoted to the question of the relative credibility of the arresting officer and the defendant. No reference was made to the events preceding November 5th, nor was there even any reference to defendant's prior conviction, even as a matter of impeachment.

In closing the prosecutor again argued the relative credibility of the officers and the defendant. He denigrated the expiration of the time within which to execute the warrant as a motiving factor for the officers, by stating that another could have been reissued after the expiration of 10 days. (Cf. *Sgro* v. *United States* (1932) 287 U.S. 206 [77 L.Ed 260, 53 S.Ct. 138, 85 A.L.R. 108].) Again there was no mention of the prior events or prior conviction.

any statement when requested to do so; and that he had refused a Nalline test. His counsel also brought out the incriminating events observed by the sergeant on October 30th, and more damaging particulars concerning the arrest of the woman on November 5th. The ostensible incriminating nature of the facts so adduced is found, when those facts are viewed with defendant's explanations, to yield to the paramount purpose of establishing that the testimony presented by the officers should be considered suspect because of their efforts, otherwise unsuccessful, to make a case against him.

Defendant's trial was not a farce or sham. Even with hindsight, no suggestion has been made as to how defendant could avoid the evidence against him on which the prosecution rested its case (see fn. 11, *supra*). He received adequate, imaginative and competent representation from his trial counsel. The trier of fact accepted the testimony of the officers and rejected his denials and explanations. He is entitled to no more.

Defendant also contends that he was denied his constitutional right to counsel when the sergeant, having focused suspicion on the defendant for engaging in prohibited narcotic activity, replaced the heroin in the rain gutter with the intention of securing an admission by conduct, that the substance was the defendant's. (See *People* v. *Dorado* (1965) 62 Cal.2d 338, 353-354 [42 Cal.Rptr. 169, 398 P.2d 361].) This preposterous suggestion overlooks the fact that the officers had no assurance that any particular person would retrieve the remaining contraband from the rain gutter, and fails to consider that the right to counsel only arises when the accused is taken into custody. (See *People* v. *Bowman* (1966) 240 Cal. App.2d 358, 371-373 [49 Cal.Rptr. 772].)

*Instructions*

Complaint is made that the court instructed the jury with respect to the conduct prohibited by section 11500 of the Health and Safety Code, by using the generic term ''narcotic'' instead of referring to heroin. Since there was no evidence to show that the defendant might be guilty of the possession of any narcotic substance other than heroin, no error can be predicated on the reading of the instructions in general terms. The jury were told that heroin was a narcotic.

*Failure to Certify for Addiction Commitment*

Following the return of the verdicts finding defend-

ant guilty and determining that he had suffered a prior conviction as charged, the proceedings were continued for hearing on the defendant's motion for a new trial, which was predicated solely on the insufficiency of the evidence and was denied, and for a probation report and sentencing. At the latter hearing the court denied probation, and the defendant was arraigned for sentence. Thereupon, the defendant requested that he be sent to a medical facility for medical assistance, and the court denied the request and sentenced him to state prison.[12]

Defendant now contends that he was denied procedural due process of law because the court did not adjourn the proceedings or suspend the imposition of the sentence and conduct proceedings to ascertain if he was addicted to narcotics under the provisions of section 3051 of the Welfare and Institutions Code as adopted in 1965. (See Stats. 1965, ch. 1226, § 2, p. 3062; and cf. Pen. Code, former § 6451; and Welf. & Inst. Code, § 3051, as amended Stats. 1967, ch. 1124, § 4, p. 2787.)[13]

In *People* v. *Ortiz* (1964) 61 Cal.2d 249 [37 Cal.Rptr. 891, 391 P.2d 163], the court, in construing the provisions of section 6451 of the Penal Code upon which the provisions in question are based, observed, "It is true that section 6451 does not set forth any formalities which the trial court must follow

---

[12]The record reflects: "[Defendant's Atty.]: May I speak this to the Court: The defendant has requested that I make a request of the Court to have him sent to a medical facility for medical assistance of this matter pursuant to the Health and Safety Code, [*sic*] and what I am going to do, in order not to say there is no legal cause for the Court to impose sentence, I would like to make my request at this time in order to protect him. The Court: May I inquire as to what disposition was made of the revocation of the probation. [Defendant's Atty.]: There has not been a disposition in that matter. The defendant made the same request in San Francisco and the Court, I think—the District Attorney informed him he was eligible and a very proper decision would be made in that matter properly before the Court. The Court: He admits the use of marijuana, heroin, methedrine crystals apparently. [Defendant's Atty.]: Yes, your Honor. The Court: Well, all things considered, I feel that this man's involvement is such that whatever treatment the State Adult Authority has at its command could be adequately applied to helping him if he still can be helped."

[13]Section 3051 provided, in part, at the time of defendant's sentencing: "Upon conviction of a defendant for any crime in any superior court, if it appears to the judge that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics he shall adjourn the proceedings or suspend the imposition of the sentence and conduct proceedings to ascertain if such person is addicted to narcotics or in imminent danger thereof unless in the opinion of the judge the defendant's record and probation report indicates such a pattern of criminality that he does not constitute a fit subject for commitment under this section."

in making its preliminary determination as to whether the defendant is addicted to narcotics or in imminent danger thereof and hence requires the institution of commitment proceedings, nor any specific criteria which the court must consider in so ruling. But the discretion thereby vested in the court should be exercised with a view to implementing, rather than possibly frustrating, the strong legislative policy disclosed by the enactments creating and governing the narcotic addict rehabilitation program. That policy, responsive to the current medico-social approach to the issue of drug addiction (see *In re De La O* (1963) 59 Cal.2d 128, 140-141 [6], 143 [8], 144-145 [10], 148 [12]-149 [13] [28 Cal.Rptr. 489, 378 P.2d 793]), favors inquiry into the addictive status of *all* criminal defendants whose record indicates the presence of an addiction problem.'' (61 Cal.2d at pp. 254-255. See also *People* v. *Jolke* (1966) 242 Cal.App.2d 132, 143 [51 Cal.Rptr. 171]; and *People* v. *Pineda,* 238 Cal.App.2d 466, 472 [47 Cal. Rptr. 879].)

A case will be remanded in order to permit the sentencing court to exercise its discretion to determine whether narcotic addict rehabilitation program proceedings should be instituted when the record reveals that the court erred in determining that the defendant was ineligible for that program. (*People* v. *Ortiz, supra,* 61 Cal.2d 249, 252-253 and 255-256; *People* v. *Ibarra, supra,* 60 Cal.2d 460, 466-467; *People* v. *Wallace* (1963) 59 Cal.2d 548, 551-553 [30 Cal.Rptr. 449, 381 P.2d 185]; *People* v. *Murgia* (1967) 254 Cal.App.2d 386, 391-394 [62 Cal.Rptr. 131]); or when it appears that the court erred in determining the extent of the defendant's criminality (*People* v. *Pineda, supra,* 238 Cal.App.2d 466, 473). On the other hand, when the sentencing court has exercised its discretion, and the record fails to show any abuse of that discretion, its determination that the defendant is not a fit subject for commitment to the program will not be set aside. (*In re Nunez* (1965) 63 Cal.2d 234, 235-236 [42 Cal.Rptr. 6, 397 P.2d 998]; *People* v. *Jolke, supra,* 242 Cal.App.2d 132, 143; *People* v. *Williams* (1965) 235 Cal.App.2d 389, 403 [45 Cal.Rptr. 427]; *People* v. *Zapata* (1963) 220 Cal.App.2d 903, 911-912 [34 Cal.Rptr. 171]; and see *People* v. *Wallace, supra,* 59 Cal.2d 548, 553.)

In this case the record shows that the court read and considered the probation report. It has not been made part of the record, nor has any request been made for an additional record. (See Cal. Rules of Court, rule 33 (a) and

(b).) It cannot be assumed that the report reveals facts which would show that the court abused its discretion. The transcript of the sentencing proceedings reveals that the judge corrected an inaccuracy which indicated that defendant's pending charge was accompanied by seven rather than one prior conviction. The only facts in the record tending to show addiction are the prior conviction for possession of marijuana, and the defendant's admission, apparently contained in the probation report, that he used marijuana, heroin and methadrine crystals. His testimony reflected that he had been hounded by the police for several years because of suspected narcotic activity. His release on five prior occasions, on some of which he took and passed Nalline tests, suggests that his activities were more in the field of furnishing and selling narcotics than in connection with his personal addiction. No error has been demonstrated in sentencing the defendant to state prison.

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied April 17, 1969, and appellant's petition for a hearing by the Supreme Court was denied May 21, 1969.